[Civ. No. 3429. Second Appellate District, Division One.—June 14, 1921.]

## ZOY GREEN, as Administratrix, etc., v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — PROOF. — Contributory negligence is an affirmative defense which must be established by a preponderance of the evidence.

[2] ID.—PEDESTRIAN CROSSING TRACK—DUTY TO LOOK AND LISTEN.— A railroad track being a place of probable danger, a pedestrian approaching such a track must both look and listen to ascertain whether there are approaching cars.

[3] ID.—EXERCISE OF DILIGENCE—PRESUMPTION — EVIDENCE. — In the absence of direct proof, the jury is at liberty to infer ordinary care and diligence on the part of the plaintiff from all the circumstances of the case—his character and habits and the natural instinct of self-preservation.

[4] ID.—CONTRIBUTORY NEGLIGENCE—EVIDENCE—INFERENCE — VERDICT. To establish the defense of contributory negligence, as against the verdict of the jury, the evidence must be such that it is not in conflict on the facts, and that from these facts reasonable men can draw but one inference, and that an inference pointing unerringly to the negligence of the deceased contributing to his own injury.

[5] ID. — KILLING OF PEDESTRIAN BY RAILROAD CAR — CONTRIBUTORY NEGLIGENCE—PHYSICAL FACTS—DEDUCTION FROM.—In this action for damages for the death of plaintiff's intestate, who was struck

2. Failure to stop, look, and listen at railroad crossing as negligence *per se*, note, 1 A. L. R. 203.

by a car of the defendant railroad company at a grade crossing, in view of the physical facts, the obstructions to the view of the deceased, and the fact that the accident occurred in the dusk of evening, the appellate court could not say that the unquestioned physical facts demonstrated a situation compelling the conclusion of contributory negligence through a failure to look and listen for the approaching car.

[6] ID.—EXONERATION OF ENGINEER — EVIDENCE — RAILROAD COMPANY NOT RELIEVED.—In such an action, a verdict and judgment in favor of the defendant engineer will not relieve the defendant railroad company from liability, where the claim of negligence as charged against the railroad company does not arise solely from the conduct of the engineer in the operation of the engine and cars, but it is also charged that the railroad company was negligent in not maintaining a flagman at the crossing and in not giving warning of the approaching engine and cars, and the evidence amply proves the truth of this latter allegation.

[7] ID.—DUTY OF RAILROAD COMPANY TO PROTECT PEDESTRIAN—NECESSITY FOR WARNING SIGNALS.—The law imposes upon a railroad company the duty to use reasonable care, corresponding to the circumstances constituting the probable danger, to avoid injury to persons lawfully traveling upon the public highway crossed by the company's tracks and trains; and it is for the jury to decide whether or not it was negligence for the company to run its cars across the highway without providing a flagman or some means of warning to travelers at the place of crossing.

[8] ID. — INABILITY TO SEE APPROACHING TRAINS — DUTY TO PLACE WARNING SIGNALS AT CROSSING.—Where the facts in evidence prove that usually or frequently there are obstructions which interfere with the opportunity to see moving trains while travelers on the highway are approaching a much traveled crossing, it cannot be held as a matter of law that it is not negligence to run trains there without warning signals other than those usually given by engines and cars.

[9] ID.—DUTY TO STOP, LOOK, AND LISTEN—CONSTRUCTION OF INSTRUCTIONS AS WHOLE.—Where one instruction as to the duty of the deceased to stop, look, and listen, standing alone and interpreted according to strict rules of grammatical construction, does not state the law correctly, but the instructions on that subject, as a whole, lay down substantially the correct rule of law, the error not being of such a character that the jury probably would be misled thereby, the instructions will be sustained.

APPEAL from a judgment of the Superior Court of San Luis Obispo County. Benj. K. Knight, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

W. I. Gilbert, W. H. Spencer and C. P. Kaetzel for Appellant.

Sullivan & Sullivan and Theo. J. Roche and S. V. Wright for Respondent.

CONREY, P. J.—This is an action prosecuted by Zoy Green, as administratrix of the estate of Harry Green, deceased, against the Southern Pacific Company and George A. Brown to recover damages for negligence which caused the death of the plaintiff's husband, who was struck by a "gondola" car at a grade crossing on Osos Street, a public street in San Luis Obispo, the car at the time being pushed by an engine then being operated by defendant George A. Brown. The verdict of the jury was in favor of the defendant Brown but against the defendant Southern Pacific Company. Judgment was entered against appellant in the sum of $21,500. While a motion for a new trial was pending this amount was, on suggestion of the trial judge and by consent of the plaintiff, reduced to the sum of $15,000, whereupon the motion for a new trial was denied. From this judgment the defendant Southern Pacific Company appeals.

Appellant contends that the verdict was not supported by the evidence in this, that the evidence without conflict established the truth of appellant's plea that the injury to Harry Green, and his death resulting therefrom, were directly caused by his contributory negligence in failing to look before leaving his place of safety to walk over the track upon which he was killed. Osos Street runs southeasterly from the business section of the city of San Luis Obispo and crosses the railroad tracks at a point north of and near to the railroad station. The railroad tracks at the railroad station lie nearly due north and south. They run northerly on a slight curve, so that within a short distance north of Osos Street their direction is southwest and northeast. The trains going northerly, toward San Francisco, are known as west-bound trains, and those going southerly at this point, toward Santa Barbara, are known as east-bound trains. The most westerly track of appellant

is known in this record as the main track. Parallel to it and easterly from it are switching tracks parallel, or nearly parallel to each other, which are successively designated as tracks one, two, three, four, and six. Tracks four and six are connected by a lead track (five) for the transfer of cars from track four to track six. At a point about 150 feet northeasterly from the point where Osos Street and track six intersect there is an ice-house located a few feet east of track six. At 279 feet from Osos Street track six is split into two parts, one of which is designated as "rip track one" and the other as "rip track two."

The home of Harry Green was located in a section of town easterly from these tracks. His place of business was somewhere in the city west of these tracks. That he was well acquainted with the railroad premises and the customary running of trains thereon is not denied. At about twenty or twenty-five minutes after 5 o'clock on the evening of November 20, 1917, Green approached these tracks while on his way toward home. With him were his wife and Mrs. Sarah Peacock. They were all walking, but Green had with him a bicycle. At the time of their arrival at the railroad tracks a freight train was standing on track three. This train had been broken into two sections, leaving Osos Street open between them. Gianopolis, a car inspector of appellant, was there in charge of an air hose which connected the two sections of the train. The inspector, in reply to a remark of Mrs. Peacock, said, "All right; you got plenty of time to cross." Thereupon Green and the two women crossed track three and proceeded across track four to the "lead track" five, and thence moving forward, attempted to cross track six, and at that point of crossing the accident occurred.

It must be taken as established by the evidence that there was no watchman or warning signal at this place, and that no bell was rung or whistle sounded, or other warning given, of the approach of any engine or car on track six. At the same time another train was moving in the yard. The freight train on track three was closed up immediately after the three pedestrians crossed that track. There were twenty-three of these cars and one engine. Gianopolis testified that just when these cars came together he heard behind him some kind of a crash and the scream of a

woman. These facts concerning the freight train are pertinent in connection with the fact that the noises caused by the movement of its engine and cars furnished one of the reasons why the deceased probably did not hear the approaching cars on track six. There is evidence that some cars were standing on track five, north of the street, and that they extended to a point within fifteen feet of the center of the roadway.

The car which struck Green was being pushed southerly by an engine which faced north and which was pulling with it two tank cars. The train crew consisted of a foreman or conductor (Wilson), an engineer (the defendant Brown), the fireman, Purcell, and Herman and Miller, brakemen. Wilson was on the north end of the north car, Brown in the engine cab, Purcell on the left-hand side of the cab, Miles somewhere north of the engine, and Herman at the rear end of the engine. There was no one at the southerly end of the gondola car, and there does not appear to have been any light there or on the train. The color of the gondola car was black and the time was at dusk or twilight of evening.

This switching train had been made up at rip tracks one and two, and on signal given by Wilson had started from that place toward Osos Street just before the time of the accident. Appellant contends that the train came to a dead stop at the ice-house at a point about 150 feet from Osos Street, whereas respondent contends that the movement of the train was continuous from the start at the rip tracks until the gondola car struck Green. Without quoting testimony we will say here that the evidence is sufficient to support respondent's position concerning these facts.

If the deceased was guilty of negligence, such negligence must consist of failure to use due care at the moment when he passed from track five to track six. As he was killed instantly the court was deprived of any testimony from him concerning the facts. The only testimony relating to those facts is that of Mrs. Peacock and Mrs. Green. At the time in question Mrs. Peacock was walking at the right of Green (the bicycle between them) and Mrs. Green was on the right of Mrs. Peacock. Referring to the conversation between those persons, the testimony of Mrs. Peacock is as follows: That after passing track three, Green

said to her, "We must look before we go any further as there was cars there. Q. He told you to look before he went any further because there were cars there? A. Yes, sir. Q. In what direction was he looking when he talked about these cars? A. West." Again: "A. We started on and the next thing I knew his wheel hit me and it warned me and I hit her and jumped and I looked around, the wheels were on his chest, of the car. Q. What wheel hit you? A. The bicycle." Mrs. Green testified as follows: "Q. Before going upon this track did you look to see if there were any cars moving? A. Yes, sir. Q. Or any engine? A. Yes, I seen and I don't see anyone move. Q. You say you saw no cars moving at all? A. I did. No cars moving at all."

[1] Contributory negligence is an affirmative defense which must be established by a preponderance of the evidence. [2] A railroad track is a place of probable danger. For that reason the rule has been established that a pedestrian approaching such a track must both look and listen to ascertain whether there are approaching cars. This is a necessary part of the duty of a person to use reasonable care for his own safety. [3] "But in the absence of direct proof, the jury is at liberty to infer ordinary care and diligence on the part of the plaintiff from all the circumstances of the case—his character and habits and the natural instinct of self preservation." (*Gay* v. *Winter*, 34 Cal. 153, 164; *Larrabee* v. *Western Pac. Ry. Co.*, 173 Cal. 743, [161 Pac. 750].) In the case last cited, while recognizing the presumption that the deceased exercised ordinary care, it is noted that that presumption is given weight only in the absence of evidence on the subject of the deceased's conduct. The court quoted with approval Thompson on Negligence (sec. 401), that this is "an artificial presumption of so weak a character that it is not to be allowed to have the effect of evidence before the jury, where the uncontradicted evidence of the circumstances attending the accident overthrows it." The law being thus defined, and there being in the present case no testimony tending directly to prove negligence on the part of the deceased, appellant is obliged to rely upon its contention that the uncontradicted evidence of the circumstances attending the accident necessarily overthrows the presumption of due care

on the part of the deceased. [4] To establish this defense of contributory negligence, as against the verdict of the jury, the evidence must be such that the court must say that it is not in conflict on the facts, and that from these facts reasonable men can draw but one inference, and that an inference pointing unerringly to the negligence of the deceased contributing to his own injury. (*Zibbel* v. *Southern Pac. Co.*, 160 Cal. 237, [116 Pac. 513].) [5] Appellant contends that in this case the unquestioned physical facts demonstrate a situation from which no other reasonable conclusion can be drawn than that the deceased was guilty of contributory negligence causing his death. We are unable to agree with this contention. It is conceded by counsel for appellant that the cars on the fifth track may have obstructed the view of deceased until he reached the track on which they were located. The distance between the inside rails of the fifth track and the sixth track at the point where the deceased was walking was a little less than nine feet. Counsel argue that since both tracks curved away from the ice-house, the deceased, from the time that he reached the last rail of track five, must have had a clear and unobstructed view of the entire track six to the starting point of the train which struck him. It must be remembered, however, that these incidents occurred in the dusk of evening, when the clearness and certainty of daytime light were absent; that the ice-house was in the background of the car as it approached; and therefore that there is some room for doubt as to the degree in which it may be said that the view was clear and unobstructed. This court cannot know to what extent the daylight had faded. A very careful attempt was made to inform the jury upon that question. In accordance with a stipulation to that effect the court caused the jury to visit the scene of the accident at a time in the evening when the amount of light was about the same as it was at the time of the accident. Cars were placed and trains were moved for the purpose of aiding those observations. It was stipulated by appellant that the jury might take into consideration everything they saw and everything that happened upon that occasion. These observations, therefore, became independent evidence in the case, of such a nature, however, that it could not be transcribed into the record. The jury having been thus in-

structed by its own observations, as well as by the testimony of witnesses, was able to define the limitations of visibility of moving trains and stationary cars at the time of the accident. In view of these facts we are not in a position to say that the unquestioned physical facts demonstrated a situation compelling the conclusion of contributory negligence through failure to look and listen for the approaching car. Mrs. Green, whose situation was about the same as that of Wilson, testified that she looked to see if there were any cars moving, and saw none.

[6] We have noted the fact that defendant's engineer, Brown, was a codefendant in this action. Upon these facts appellant suggests that because Brown was its agent, appellant is exonerated by the verdict in favor of the agent. In *Bradley* v. *Rosenthal,* 154 Cal. 420, 425, [129 Am. St. Rep. 171, 97 Pac. 875], it was decided that where recovery is sought, based upon the act or omission of an agent whom a principal did not direct and in which the principal did not participate, and where, thus, his responsibility is simply the responsibility cast upon him by law by reason of his relationship to his agent, the effect of the judgment in favor of and exonerating the agent is such that the principal is thereby relieved of responsibility. (See, also, *Fimple* v. *Southern Pac. Co.,* 38 Cal. App. 727, [177 Pac. 871].) So in the case at bar, if the claim of negligence as charged against appellant arose solely from the conduct of the engineer in the operation of the engine and cars, without express instructions of appellant governing the particular manner of running the train, and without other acts of negligence on the part of appellant, a verdict and judgment in favor of the engineer would relieve appellant from liability for such alleged negligence.

The complaint, as amended at the trial, contains the allegation that prior to the time when said freight-car came in contact with the deceased, the defendant corporation carelessly and negligently failed and neglected to place or maintain any flagman or signal-man, or any other person or persons, or to show or give any signal or signals whatever, at or near said Osos Street, or on or near said gondola freight-car, to warn or notify pedestrians, or other persons, crossing or about to cross said tracks of defendant corporation on said Osos Street, of the approach of said gondola

freight-car and said locomotive. The evidence amply proved the truth of that allegation. That charge of negligence presented one of the issues which was submitted to the jury.

Appellant replies that there is no evidence that the deceased was misled by the failure of appellant to keep a signal-man there; that for years the deceased had crossed the same track under the same circumstances, and therefore could not have depended upon the presence of a flagman for his safety. Further, in this connection, appellant asserts that no duty was by law imposed upon it to keep a signal-man there. [7] But the law does impose upon a railroad company the duty to use reasonable care, corresponding to the circumstances constituting the probable danger, to avoid injury to persons lawfully traveling upon the public highway crossed by the company's tracks and trains. It then becomes a question for a jury to decide whether or not it was negligence for the company to run its cars across the highway without providing a flagman or some means of warning to travelers at the place of crossing. [8] And where the facts in evidence prove that usually or frequently there are obstructions which interfere with the opportunity to see moving trains while travelers on the highway are approaching a much traveled crossing, it cannot be held that as a matter of law it is not negligence to run trains there without warning signals other than those usually given by engines and cars. "The question really is as to what is due care where the view of the tracks is obstructed and it is usually left to the jury to say whether, in view of the obstructions, the company has exercised ordinary care in respect to the peculiarly dangerous condition of the crossing; whether ordinarily prudent men would have taken extra precautions; and whether such precautions were taken in the particular case. This rule requiring the adoption of extraordinary means to signal the approach of trains at peculiarly dangerous crossings also has frequent illustration in cases where trains or engines have been backed over crossings. Thus a railroad company has been held grossly negligent in backing a train across a much frequented crossing without a brakeman at the rear end as a lookout, and ready, in case of danger, to apply the brakes, and thus prevent collision or accident." (22 R. C. L., p. 990.) In view of these principles, and the negligence pleaded and

proved in this action, we conclude that the verdict in favor of defendant Brown does not bar the right of recovery against appellant. In their report to the company, the trainmen themselves said that the accident could have been avoided "if there had been a flagman stationed at the crossing." The jury, under the evidence, was authorized to determine that failure to have a flagman there was negligence and was a proximate cause of the accident.

[9] The final error claimed by appellant is in the giving of instruction numbered XXV, a part of which stated that if deceased "stopped, looked, and listened . . . and . . . *did not hear nor see* said locomotive or gondola freight-car being run or operated upon said track, and was not aware of the approach of said locomotive and gondola freight-car, *or* with the exercise of reasonable care and caution could not see," etc., the deceased was not guilty of contributory negligence. The words italicized by us direct attention to the point made. Appellant argues that the jury was thus told in substance that if Green looked and did not see, however careless his inspection, however unseeing his eyes, they must find for the plaintiff. Standing alone and interpreted according to strict rules of grammatical construction, this instruction does not state the law correctly and is subject to that criticism. But there were other instructions bearing upon the same subject. The jury were told that if they believed from the evidence that the deceased "did not look or listen for the approaching train when he was on the track next to what is called the rip track, or when he was between said track and the rip track, and further believe that he could have seen or heard the approaching train which struck and killed him, and thereupon remained in his place of safety until the train passed, then the court instructs you that your verdict must be for the defendants." In another instruction the court said: "A railroad track upon which trains frequently run is itself a warning of danger to any person who has reached the years of discretion and who is possessed of ordinary intelligence that it is not safe to walk across it without the exercise of constant vigilance in order to be made aware of the approach of a railroad locomotive and cars, and thus be enabled to avoid injury. A failure of such person, so situated with reference to the railroad track, to exercise such watchfulness

and care and to make use of all his senses to avoid the danger incident to such a situation, is negligence which precludes a recovery.'' Considering the instructions as a whole, the language criticised does not result in error of such a character that the jury probably would be misled thereby. Instructions to the jury are not to be tested by particular clauses without considering them in connection with the instructions as a whole. If, when examined together, the instructions lay down substantially a correct rule, they will be sustained. (*Peters* v. *Southern Pac. Co.,* 160 Cal. 48, 69, [116 Pac. 400].)

The judgment is affirmed.

Shaw, J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 11, 1921.

All the Justices concurred, except Angellotti, C. J., and Wilbur, J., who were absent.