[Civ. No. 4205.   Second Appellate District, Division Two.—April 10, 1924.]

## ANNIE N. SMITH et al., Appellants, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Respondent.

[1] NEGLIGENCE — DEATH OF PEDESTRIAN AT RAILROAD CROSSING — WARNING OF APPROACHING TRAIN — CONTRIBUTORY NEGLIGENCE — NONSUIT.—In this action for damages for the death of a person who was killed upon the tracks of the defendant railway company by one of its electric freight trains, the evidence having shown that the deceased was well, vigorous, and in the possession of all his faculties, that the track along which the motor was proceeding immediately before the accident was straight for a distance of several hundred feet from the point at which deceased was struck; that the motor was moving forward along the right-hand track, that the motor was equipped with a headlight which was lighted, and that near the tracks, and about seventy-two feet away in the direction from which the train was approaching, a wig-wag or automatic flagman, which oscillated back and forth perceptibly, accompanied by the ringing of a bell, and from which a red light shone, was excited to action when the train was at a distance of about six hundred feet and continued to operate until after deceased was run down, the trial court properly granted defendant's motion for nonsuit on the ground of contributory negligence.

[2] ID.—ABILITY TO SEE HEADLIGHT—REFLECTION OF RAYS INTO AIR.— The fact that the reflection of the headlight on such electric train was so placed at the time that its direct rays were not thrown upon the track along which the train proceeded, but into the air above the track, did not tend to relieve the deceased from the charge of contributory negligence, where such headlight, while not as dazzling as it would have been if its direct rays had been projected along the track, would have been plainly discernible to the deceased if he had looked in the direction of the approaching train before he attempted to cross the tracks.

[3] ID.—WARNING OF APPROACH OF TRAIN—NOISE ON TRACK—JUDICIAL KNOWLEDGE.—The fact that a witness who was in an automobile that had stopped near the crossing where the accident occurred testified that he heard no noise from the approaching motor did

---

1.  See 19 **Cal. Jur.** 641; 20 **R. C. L.** 99.

2.  Contributory negligence of one injured by failure of railroad company to have forward light on car or train preceding engine, or on engine running backward, notes, 15 **Ann. Cas.** 463; 15 **A. L. R.** 1535.

3.  See 10 **Cal. Jur.** 459, 723; 10 **R. C. L.** 1011; 15 **R. C. L.** 1104.

not establish that the deceased had no warning of its approach from any source; and, from the fact that it was a freight motor and was running at a rate of from twenty-five to thirty-five miles per hour, the trial court was bound to know that it could not have approached the deceased without causing such a vibration or rumble of the track as would have conveyed a vivid warning to him, if he were alert and attentive to his duty to himself and to the railway company under the law.

[4] ID.—NEGLIGENCE OF DECEASED—CAUSE OF DEATH—INFERENCE.—The fact that the motor was traveling at an excessive speed and that persons in the automobile at the crossing heard no sound of whistle or bell from it as it approached did not require a reversal of the judgment of nonsuit where, under all the circumstances, particularly the evidence as to the headlight and the wig-wag and the judicial knowledge which the trial court had as to the noise made on the tracks by the motor, the trial court was bound to draw the inference that the deceased, in a moment of abstraction, preoccupation, or aberration, walked negligently into his death.

[5] ID. — PROPER WORKING OF WIG-WAG — TIME — KNOWLEDGE OF DECEASED—EVIDENCE.—Conceding that the trial court erred in refusing plaintiffs' offer to prove that for more than a year preceding the accident the wig-wag had not worked properly, or, rather, had been out of order at intervals, and in limiting the proof upon the point to the period of ten days preceding the accident, the error was harmless, where there was no evidence or contention that it did not work properly during that time, and decedent's familiarity with the conditions at the intersection was such that he could not but have known that the wig-wag had been working well for ten days.

---

(1) 33 Cyc., p. 1113.    (2) 33 Cyc., p. 1009.    (3) 23 C. J., p. 69, sec. 1826.    (4) 33 Cyc., p. 1113.    (5) 4 C. J., p. 1005, sec. 2987.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

D. A. Stuart for Appellants.

Frank Karr, R. C. Gortner and W. R. Millar for Respondent.

WORKS, J.—This action was brought for the recovery of damages caused to plaintiffs by the death of Archie Smith,

---

4. See 10 Cal. Jur. 738.
5. See 2 Cal. Jur. 1022; 2 R. C. L. 253.

who was killed upon the railroad tracks of defendant by one
of its electric freight motors. Plaintiffs sued as the heirs
of deceased. At the conclusion of the evidence offered by
plaintiffs the trial court granted a motion for nonsuit on
the ground that the evidence showed that deceased lost his
life because of his contributory negligence, and judgment
went for defendant accordingly. Plaintiffs appeal.

[1] It is contended that the court erred in granting
the motion for nonsuit. At the time of his death deceased
was of the age of fifty-six years, well, vigorous, and in the
full possession of all his faculties. He resided at one of the
four corners formed by the intersection at right angles of
respondent's right of way with a certain highway. On an-
other of these corners, directly across respondent's double
electric railway tracks from the residence of deceased, was
situated a store. At a distance seventy-two feet from the
highway property line a path crossed the tracks in a slightly
diagonal direction from a point at or near the residence
of deceased to a point at or near the store. Deceased had
lived in the same place for a period of about four years
and during that time he and other residents in his neigh-
borhood had used the path as a means of going to and re
turning from the store. The catastrophe which cost deceased
his life occurred in the early evening, but after complete
nightfall. He had been to the store and had made some
purchases there. On returning to his home along the path
which has been mentioned he progressed to the point at
which it intersected one of respondent's tracks and was
there run down and instantly killed.

The track along which the motor was proceeding imme-
diately before the accident is straight for a distance of
several hundred feet from the point at which deceased was
struck. The motor was moving along the right-hand track;
that is, it was coming from the direction toward which a
person, traveling as was deceased, must have looked to ascer-
tain whether it was dangerous to cross at the moment. The
motor was equipped with a headlight which was lighted.
[2] The reflection of this light was so placed at the time,
however, that its direct rays were not thrown upon the
track along which the motor proceeded, but into the air
above the track. One witness testified that these direct rays
at a distance of two hundred feet in front of the motor

were forty or fifty feet above the ground. Appellants would make much of this condition of affairs, but it cannot avail them. It in no way tends to relieve deceased from the charge of contributory negligence. While the approaching headlight was not as dazzling as it would have been if its direct rays had been projected along the track, it would have been plainly discernible to deceased if he had looked in the direction of the approaching motor before he attempted to cross, as it was his duty to do. The headlight was actually seen at a distance of two hundred feet by persons in an automobile as the freight motor came toward the intersection and they stopped in order to allow the motor to pass in front of them.

Near respondent's tracks and upon the line of the highway nearest the path already mentioned, being distant from the latter about seventy-two feet, as already indicated, was located what is known as a wig-wag or automatic flagman. This device was maintained by respondent for the purpose of giving warning of the approach of cars or trains toward the intersection. It was excited to action upon the approach of a train to a distance of six hundred feet from it and continued its action until the train had passed three hundred feet beyond it. When in operation the wig-wag oscillated back and forth° perceptibly. When it started to operate, and as an accompaniment to its oscillation, a red electric light shone and a bell rang from it. The device was located between the point at which the path crossed the tracks and the direction from which the freight motor came. Before the motor reached the point from which the action of the wig-wag was customarily excited the device was dark, silent, and stationary. At that point the motor set it to work and it operated until after deceased was run down.

[3] Because a witness who was in the automobile above mentioned testified that he heard no noise from the approaching motor, appellants insist that deceased had no warning of its approach from any such source. This argument does not follow from the testimony of the witness and it runs counter to sense and experience. The standing automobile in which the witness was seated was not itself quiet. Its engine was "running idle," according to the witness, and it did not "make a great deal of noise." This noise must have been sufficient, however, to prevent the

witness from hearing the approaching motor, or he must have failed to hear it for some reason other than that it made no sound. The evidence shows that the motor was running at a rate of from twenty-five to thirty miles per hour at the time of the accident. It was a freight motor, that is, it was used for the purpose of drawing freight-cars. We are pointed to no evidence as to its size, but if we assume that it was a motor of the smallest kind employed in hauling freight trains, or of drawing even a single car, we are bound to know, as was the trial court, that it could not have approached deceased at the rate of speed attributed to it without causing such a vibration or rumble of the track as would have conveyed a vivid warning to him, a person possessed of at least ordinary hearing, as he was, if he were alert and attentive to his duty to himself and to respondent under the law.

[4] Appellants also contend that the motor was traveling at an excessive rate of speed. Also there was evidence that the persons in the automobile at the crossing heard no sound of whistle or bell from it as it approached, and appellants base their argument for a reversal somewhat on that ground. These two claims, as we conceive, cannot, under all the circumstances, have any bearing upon the question of the contributory negligence of deceased. The trial court, from the evidence as to the headlight and the wig-wag and from the judicial knowledge which it had as to the noise made on the tracks by the motor, was bound to draw the inference that deceased, in a moment of abstraction, preoccupation, or aberration, walked negligently into his death. In fact, the evidence as to the headlight and the wig-wag, without the other circumstance, must have impelled the court irresistibly to that inference. The motion for nonsuit was properly granted.

[5] Appellants offered to prove that for more than a year preceding the accident the wig-wag had not worked properly, or, rather, had been out of order at intervals. They expected to show that at such times it kept in operation for hours without intermission, not being stopped in its work by trains after they had passed the intersection. They argued, and argue now, that the long residence of deceased at the crossing made him familiar with the short-

comings of the wig-wag, and that, under the conditions which they sought to establish by the offered evidence, he would have been relieved of all duty to note the actions of the discredited mechanism. Bearing in mind that the wig-wag was inactive just preceding the catastrophe to deceased and that it sprang into light, sound, and motion upon the approach of the motor, it is to be observed that there was no offer to prove that at any time it ever failed to operate upon the approach of a train when it had been inactive immediately preceding such approach. For this reason it is possible that the offered evidence was entirely immaterial, although as to that point we express no opinion. The trial court refused to admit the evidence as offered and limited the proof of appellants upon the point to the period of ten days preceding the accident. It is claimed that the court committed error in so limiting the evidence, but we need not determine that question. There is nothing in the record to show that the wig-wag did not act perfectly in all respects during the ten days and no claim is made that it did not work perfectly during that time. If the court did err, which we do not decide, the error was therefore harmless. Deceased's familiarity with conditions at the intersection was such that he could not but have known that the wig-wag had been working well for ten days. He had the opportunity during that time to observe its behavior and, especially, he had that opportunity when he went to the store to make his purchases. If the conditions as to the mechanism had been different during the ten days, if it had been in order but part of the time, there would be present some reason for a consideration of the point which appellant makes, although we are not prepared to say that even in such a situation the error of the trial court, if for the sake of argument it be conceded that there was one, would have been harmful. It is possible that under the law it would have been incumbent upon deceased, under such a condition, to exercise a higher degree of prudence as to other avenues of protection to himself, by the more narrowly looking for a headlight and noting the vibration of the rails. In practice, the ordinarily prudent man, familiar with conditions at such a crossing, as was deceased by his long residence at the intersection, naturally would be impelled to the exer-

cise of his every power of observation if he knew that the wig-wag was erratic in its action.

Judgment affirmed.

Finlayson, P. J., and Craig, J., concurred.