[L. A. No. 18534. In Bank. May 3, 1943.]

SAM PERI et al., Respondents, v. LOS ANGELES JUNC-
 TION RAILWAY COMPANY (a Corporation), Appel-
 lant.

Lyndol L. Young and Forrest F. Murray for Appellant.

Devlin & Devlin & Diepenbrock, Malcolm Davis, Jonathan C. Gibson, Charles W. Dooling and O. O. Collins as Amici Curiae on behalf of Appellant.

Paul Blackwood and Samuel P. Young for Respondents.

CARTER, J.—Defendant, Los Angeles Junction Railway Company, a corporation, appeals from a judgment entered

on the verdict of a jury for damages for personal injuries suffered by plaintiffs in a railroad crossing accident.

Defendant operates a railroad in Los Angeles County. Its tracks, extending easterly and westerly, cross at grade Atlantic Boulevard, a four lane surfaced highway, extending northerly and southerly. On the south side of the tracks and the east side of the highway there was located a wigwag signal, the customary post with cross arms warning of the presence of the crossing, and another smaller sign bearing the letters "R.R." About 120 feet south of the tracks there was marked on the surface of the highway in white, partially obliterated, two crosses and the letters "RRRR." East of the highway and along the south side of the tracks, buildings were standing.

The collision occurred on September 20, 1940, at between 2:00 and 3:00 a.m. A heavy fog pervaded the atmosphere in the vicinity which, together with other circumstances, limited the field of visibility to from 5 to 10 feet for dark objects and from 35 to 50 feet for lighted objects. It was dark and there were no street lights or lights of any character burning in the entire vicinity. Defendant's freight train consisting of the engine and 32 box cars was traveling east on its tracks at the crossing at 4 to 6 miles per hour. Plaintiffs were passengers in an automobile driven by Mr. Guida. He was driving his car north on the highway in the lane next to the center line at a speed of 15 miles per hour. The lights of his car were illuminated. He was leaning over the steering wheel peering ahead as he approached the crossing. Guida observed the train on the crossing when about 15 feet therefrom. He swerved to the right and applied his brakes but nevertheless collided with the train. His car struck the fourth boxcar from the engine, resulting in personal injuries to plaintiffs. The train did not stop its forward motion after the collision. Neither the bell nor whistle on the locomotive were sounded. There were no lights on the train except the headlight of the engine, the beam of which was obscured from Guida's view after the engine passed the crossing by the buildings on the south side of the tracks. The wigwag signal was not operating by sounding, lighting, or moving, while Guida was approaching the crossing. There were no flares exhibited, watchman present or any device to warn of the presence of the train moving on the crossing other than above mentioned. Most of the train crew were in the engine. There was no caboose on the train. One member of the crew was on the rear car and carried a lantern.

Guida, the driver of the car was familiar with the crossing and knew he was approaching it at the time in question.

Defendant's chief contention is that as a matter of law it was not negligent and that the sole proximate cause of the accident was the claimed negligence of Guida. Defendant admitted at the trial that plaintiffs were not guilty of contributory negligence and that it was not an issue in the case. It also urges that the more substantial evidence in the case is contrary to the foregoing résumé of the facts, and that the statements of several witnesses should not be believed.

Turning first to the last mentioned contention it must be remembered that the jury was the sole judge of the credibility of the witnesses and the weight of the evidence. Those matters are not within the province of an appellate court. It may be trite, but none the less pertinent to refer to the rule stated by this court in *Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]:

"In reviewing the evidence on such an appeal all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court."

Upon the issue of visibility and the ability to sense that the train was on the crossing, it is undisputed that the night was dark. Several witnesses testified that the fog was very heavy and that there were no lights burning. Witness McGuire was driving a distance of 30 to 40 feet behind Guida and had been so following him for about 1,000 feet. He could see "Just the faint glare of the red taillight" on Guida's car; the range of visibility was from 5 to 10 feet. An officer who arrived at the scene shortly after the accident testified as follows as to what he observed when the engine of the train returned: "Q. With reference to visibility, tell us what you observed in that regard? A. Well, at that time where I was standing, which would be about the center of the street, 30

feet, and the engine was about . . . oh, 8 or 10 feet from the property line. I mean by that from what would be the street, all of that, I couldn't see the engine." There were no lights from the other side of the train which outlined it. What may have been the condition in that respect a few minutes after the collision does not compel a contrary conclusion inasmuch as other cars may have arrived. McGuire stated he had not seen or heard the train or seen its headlight while approaching the crossing.

That the wigwag was not operating, that is, its light was not burning nor was its bell ringing, clearly appears from the testimony of McGuire as well as others. He stated that he was familiar with the crossing and was watching for the wigwag. That he did not see it nor hear its bell ringing. After the collision he got out of his car and the train was still passing over the crossing, but the wigwag was not operating. Some of the members of the train crew testified that the wigwag was working and was in good repair but that merely created a conflict in the evidence. (*Eastman* v. *Atchison T. & S. F. Ry. Co.*, 51 Cal.App.2d 653 [125 P.2d 564]. The case is not like *Billig* v. *Southern Pacific Co.*, 192 Cal. 357 [219 P. 992], where there was no evidence that the driver of the car was watching for the wigwag. If the wigwag had been operating its light could have been seen for a distance of 30 to 40 feet and the bell heard probably a greater distance. Ordinarily no evidence is available to one who claims a wigwag is not operating, other than evidence that within the range of observation or hearing it was not detected although attention was directed toward it. It also may be mentioned that witness Markley who was at the scene of the accident with McGuire after the collision and while the train was still passing over the crossing, testified that the wigwag was not operating. Guida, the driver of the car, stated that he was familiar with the crossing and was watching for the wigwag while approaching the crossing but it was not operating. Any conflicts have been resolved against defendant by the appropriate forum.

In regard to the sounding of a whistle or bell by defendant, there is adequate evidence to support the implied finding of the jury that neither was done, at least, after the engine passed the crossing. Several witnesses who were in one of the cars, Guida's or McGuire's, approaching the crossing, heard no bell or whistle. It may be inferred that if one or

the other had been sounded they would have heard it. It cannot be said as a matter of law that they were not in a position to hear it. If a witness is in a position to hear the bell or whistle of the locomotive and he testifies he heard neither, such testimony is sufficient to raise a conflict with positive testimony that such warning was given. (*Eastman* v. *Atchison, T. & S. F. Ry. Co., supra; Jones* v. *Southern Pacific Co.*, 74 Cal.App. 10 [239 P.429]; *Lindsey* v. *Pacific Electric Ry. Co.*, 111 Cal.App. 482 [296 P. 131]; *Lahey* v. *Southern Pacific Co.*, 16 Cal.App.2d 652 [61 P.2d 461]; *Hamilton* v. *Pacific Electric Ry. Co.*, 12 Cal.2d 598 [86 P.2d 829]; *Downing* v. *Southern Pacific Co.*, 15 Cal.App.2d 246 [59 P.2d 578].)

There is no question that no warning of the presence of the train, other than a bell, whistle, or wigwag was given. The unlighted crossarm warnings and the like would be of little effect under the conditions of visibility existing at the time of the accident.

It is asserted that the photograph of Guida's car shows by reason of the front end being crushed in that he did not swerve to the right after seeing the train as appears from the testimony. That is of small significance inasmuch as it is difficult to ascertain the precise nature of the destruction that a collision with a moving train will cause. The testimony was positive and clear that the car did swerve. Reference is made to Guida's testimony that when he applied his brakes he was traveling so fast that he did not think ''hardly anything happened. We just hit the box car.'' It is asserted that if the brakes had been applied the collision would have been avoided inasmuch as he was traveling at 15 miles per hour, and saw the train when he was 15 feet therefrom. That presented a factual question for the jury. Consideration must be given to the time within which he reacted after seeing the train, and the mental confusion that would reasonably exist when suddenly confronted with an object looming in his path a short distance ahead. Guida testified that he applied his brakes. Evidence is referred to which indicates that Guida was traveling at a greater rate of speed than 15 miles per hour. It consisted chiefly of statements taken by defendant and used in an endeavor to impeach plaintiffs' witnesses. There is ample and substantial evidence that the speed of Guida's car was 15 miles per hour.

In considering the question of whether the jury's finding

of negligence on defendant's part may be upset and a determination made that as a matter of law defendant was not negligent, certain principles should be observed.

Generally speaking the duty to exercise reasonable or ordinary care is imposed upon the operator of a railroad at public highway crossings with respect to persons traveling upon the highway and over the crossing, both as to the manner of operating the train and the maintenance of the crossing. The standard of care is that of the man of ordinary prudence under the circumstances. (*Tousley* v. *Pacific Electric Ry. Co.*, 166 Cal. 457 [137 P. 31]; *Bilton* v. *Southern Pacific Co.*, 148 Cal. 443 [83 P. 440]; *Marchetti* v. *Southern Pac. Co.*, 204 Cal. 679 [269 P. 529]; *Green* v. *Southern Pacific Co.*, 53 Cal.App. 194 [199 P. 1059]; *Lininger* v. *San Francisco, V. & N. V. R. R. Co.*, 18 Cal.App. 411 [123 P. 235]; *Hinkle* v. *Southern Pacific Co.*, 12 Cal.2d 691 [87 P.2d 349].)

The question of the negligence of the railroad operator is ordinarily one of fact in crossing cases as it is in other negligence cases (*Hinkle* v. *Southern Pacific Co., supra; Tousley* v. *Pacific Electric Ry. Co., supra; Bilton* v. *Pacific Co., supra; Marchetti* v. *Southern Pac. Co., supra; Green* v. *Southern Pacific Co., supra; Young* v. *Pacific Electric Ry Co.*, 208 Cal. 568 [283 P. 61]; *Ellis* v. *Central California Traction Co.*, 37 Cal.App. 390 [174 P. 407]; *Badostain* v. *Pacific Electric Ry. Co.*, 83 Cal.App. 290 [256 P. 576]; *Johnson* v. *Southern Pac. Co.*, 105 Cal.App. 340 [288 P. 81]; *Dow* v. *Southern Pac. Co.*, 105 Cal.App. 378 [288 P. 89]; *Eastman* v. *Atchison T. & S. F. Ry Co., supra.*) Too frequently appellate courts have ignored those fundamental principles when dealing with railroad crossing accidents, and have arbitrarily substituted their conclusions of law as to the care a man of ordinary prudence would exercise under the circumstances presented to the trier of facts. The correct approach is expressed in *Pokora* v. *Wabash Ry. Co.*, 292 U.S. 98, 105 [54 S.Ct. 580, 78 L.Ed. 1149, 91 A.L.R. 1049], involving a crossing accident, where contributory negligence is discussed:

"Illustrations such as these bear witness to the need for caution in framing standards of behavior that amount to rules of law. The need is the more urgent when there is no background of experience out of which the standards have emerged. They are then, not the natural flowerings of behavior in its customary forms, but rules artificially developed, and imposed from without. Extraordinary situations

may not wisely or fairly be subjected to tests or regulations that are fitting for the common-place or normal. In default of the guide of customary conduct, what is suitable for the traveler caught in a mesh where the ordinary safeguards fail him is for the judgment of a jury.''

In the instant case there exist circumstances which have a very significant bearing upon the care that should have been exercised by the defendant, the chief of which was the condition of visibility. The conditions with respect to the ability of a traveler on the highway to observe the train approaching the crossing and the character of the crossing may be a basis for the conclusion of the trier of fact that the defendant failed to conform to the required standard of care in respect to the warnings it must give of the approach of the train to the crossing. The court in *Marchetti* v. *Southern Pac. Co., supra,* 684, quotes with approval from *Green* v. *Southern Pacific Co.,* 53 Cal.App. 194 [199 P. 1059]:

''. . . that the law imposed 'upon a railroad company the duty to use reasonable care, *corresponding to the circumstances* constituting the probable danger, to avoid injury to persons lawfully traveling upon the public highway crossed by the company's tracks and trains. It then becomes a *question for the jury to decide whether or not it was negligence for the company to run its cars across the highway without providing a flagman or some means of warning to travelers at the place of crossing.* And where the facts in evidence prove that usually or frequently there are *obstructions which interfere with the opportunity to see moving trains* while travelers on the highway are approaching a much-traveled crossing, it cannot be held that as a matter of law it is not negligence to run trains there without warning signals other than those usually given by engines and cars.' '' (Emphasis added.) And with reference to speed being negligence the particular circumstances are important as recognized in *Young* v. *Pacific Elec. Ry. Co.,* 208 Cal. 568, 572 [283 P. 61]:

''While it is true that no rate of speed is negligence *per se* in the absence of a statute or ordinance, it does not follow that a railroad company will be permitted to run its trains under *all conditions* at any rate of speed it may choose. It must regulate its speed with proper regard for the safety of human life and property, especially when running through towns and cities. The *character of a crossing,* it has been well reasoned, *affects the duty of the railroad company toward*

*travelers upon the public highway,* and its trains must pass over dangerous crossings at a less rate of speed proportionate to the danger. . . . As the *standard of duty shifts with the circumstances developed in the case, the question whether or not a rate of speed is excessive is one of fact for the jury.*" (Emphasis added.) Likewise, it is only reasonable to say that the necessity, nature, character and extent of the warnings such as flagmen, flares, lights and signals, shifts with the circumstances of the particular case, and is a question of fact in each case. (See *Cooper* v. *Southern Pacific Co.,* 43 Cal.App.2d 693 [111 P.2d 689]; *Alloggi* v. *Southern Pacific Co.,* 37 Cal.App. 72 [173 P. 1117]; *California Rendering Co.* v. *Pacific Elec. Ry. Co.,* 205 Cal. 73 [269 P. 922].)

While the above-cited cases involved a collision with a train approaching a crossing rather than where one is already occupying the crossing and moving thereon, as in the instant case, there is no sound basis of distinction with reference to the general principles governing the case. ■ True, a railroad company has the right to occupy a crossing while passing over it the same as it has a right to approach a crossing, but that does not mean that it must not exercise the care required of a person of ordinary prudence under the circumstances in either case. (See *Norton* v. *City of Pomona,* 5 Cal.2d 54, 60-61 [53 P.2d 952].) ■ Whether or not defendant was negligent was a question of fact when all the circumstances are considered. The unlighted crossing, the darkness, the fog, and the unlighted train, established a condition under which Guida could not see the train. It was an obstruction across the highway which was not visible to the driver of the car for more than 5 to 10 feet. Defendant as a person of ordinary prudence may be reasonably required to anticipate that a traveler on the highway might collide with the train unless some warning of its presence is given. No warning of any kind was given by defendant. A light was visible for a distance of 35 to 40 feet, and it is reasonable to conclude that if a flagman had been posted at the crossing with a light, or if lights had been displayed on the train, or if flares had been placed at the crossing, or if the wigwag signal had been lighted and operating, or the bell or whistle had been sounded, the collision could have been avoided. The conditions with respect to visibility being as stated it cannot be said as a matter of law that the presence of the train on the crossing was sufficient warning of danger. It could not be seen, and the jury was justified in finding that defendant as a person

of ordinary prudence should have, under the circumstances, anticipated that fact. Nor may it be said the train could be heard inasmuch as there is evidence that it was not heard by those in a position to hear it. There is no substantial difference between a train standing on a crossing and one moving thereon under the circumstances here presented. The driver of the car could not see the train, and it may be inferred that such inability arose from the condition of visibility even though the train was moving; and as also appears he did not hear it. The engine was a diesel and the train was moving slowly. It was not traveling at a fast speed as was the case in *Smith* v. *Pacific Elec. Ry. Co.*, 66 Cal.App. 485 [226 P. 626], and *Heitman* v. *Pacific Electric Ry. Co.*, 10 Cal.App. 397 [102 P. 15].

There are authorities involving trains or railroad cars standing on or moving over crossings in which the circumstances were the same or similar, or like principles were in question, in which the issue of the defendant's negligence has been held to be one of fact for the trier of fact. Where the conditions existing at the crossing create an unusual hazard or danger, the operator of the railroad must exercise care commensurate with those circumstances, and whether he has done so is a question of fact. (See *Harper* v. *Northwestern Pac. R. Co.*, 34 Cal.App.2d 451 [93 P.2d 821]; *Brewer* v. *Southern Pac. Co.*, 29 Cal.App.2d 251 [84 P.2d 230]; *Southern Pac. Co.* v. *Haight*, 126 F.2d 900, cert. denied, —— U.S. —— [—— S.Ct. ——, 87 L. Ed. ——]; *Bingham* v. *Powell*, 195 S.C. 238 [11 S.E.2d 275]; *Crapse* v. *Southern Ry. Co.*, —— S.C. —— [21 S.E.2d 737]; *Prescott* v. *Hines*, 114 S.C. 262 [103 S.E. 543]; *Myers* v. *Atlantic Coast Line R. Co.*, 172 S.C. 236 [173 S.E. 812]; *Richard* v. *Maine Cent. R. Co.*, 132 Me. 197 [168 A. 811]; *Beaumont, Sour Lake & Western R. Co.* v. *Cluck*, (Tex.Civ.App.) 95 S.W.2d 1033; *Gulf, C. & S. F. Ry. Co.* v. *Picard*, (Tex.Civ.App.) 147 S.W. 2d 303; *Beaumont, S. L. & W. R. Co.* v. *Richmond*, (Tex. Civ.App.) 78 S.W.2d 232; *Elliott* v. *Missouri Pac. R. Co.*, 227 Mo.App. 225 [52 S.W.2d 448]; *Carson* v. *Baldwin*, 346 Mo. 984 [144 S.W.2d 134]; *Poehler* v. *Lonsdale*, 235 Mo. App. 202 [129 S.W.2d 59]; *Carson* v. *Thompson*, —— Mo. App. —— [161 S.W.2d 995]; *Southern Ry. Co.* v. *Lowry*, 59 Ga.App. 109 [200 S.E. 553]; *Squyres* v. *Baldwin*, 191 La. 249 [185 So. 14]; *Jarvella* v. *Northern Pac. Ry. Co.*, 101 Mont. 102 [53 P.2d 446]; *Los Angeles & Salt Lake R. Co.* v.

*Lytle,* 56 Nev. 192 [47 P.2d 934, 52 P.2d 464] ; *Schofield* v. *Northern Pac. Ry. Co.,* 4 Wn.2d 512 [104 P.2d 324].) The comment in *Carson* v. *Baldwin, supra,* p. 136 [of 144 S.W.2d], is pertinent:

"Appellant makes the further contention that the court erred in submitting the case to the jury because there were no special conditions or circumstances peculiar to the crossing which made it so unusually hazardous as to require the maintenance of a watchman or warning light. It is not denied that there was no warning of any kind of the presence of the car except the car itself. Where special conditions create unusual hazards at a crossing some warning to travelers of the approach or presence of a train at the crossing may be required in the exercise of ordinary care. This is so for the reason a train may not be seen in time to prevent a collision because of such peculiar conditions." Likewise in *Jarvella* v. *Northern Pac. Ry. Co., supra,* [at p.] 449 [of 53 P.2d] :

"It is generally held that at an ordinary crossing in a case where, as in this, a train has stopped on the crossing, or is moving slowly over it, it is not negligence on the part of the railway company in failing to blow the whistle or ring the bell . . . or to place warning lights along the train . . . or to provide a flagman to warn the traffic. . . .

"Many cases adhering to the rules stated, *supra,* concede that cases may arise because of peculiar and unusual facts and circumstances and owing to some peculiar environment rendering the situation unusually hazardous which may render a railway company negligent in the blocking of a crossing by a standing or slowly moving train of cars, as is illustrated by the following cases: *Crosby* v. *Great Northern Ry. Co.,* 187 Minn. 263 [245 N.W. 31] *supra; Gage* v. *Boston & M. R. R.* [77 N.H. 289 (90 A. 855, L.R.A. 1915A 363)] *supra; Jacobson* v. *New York, S. & W. R. Co.* [87 N.J.L. 378 (94 A. 577)] *supra; Gulf, M. & N. R. Co.* v. *Holifield* [152 Miss. 674 (120 So. 750)] *supra; St. Louis-San Francisco Ry. Co.* v. *Guthrie* [216 Ala. 613 (114 So. 215, 56 A.L.R. 1110)] *supra; Southern Ry. Co.* v. *Lambert* [230 Ala. 162 (160 So. 262)] *supra; Sisson* v. *Southern Ry. Co.* [62 App.D.C. 356 (68 F.2d 403)] *supra; Thompson* v. *St. Louis, Southwestern Ry. Co.,* (Tex. Civ. App.) 55 S.W.2d 1084; *Ausen* v. *Minneapolis, St. Paul & S. S. M. Ry. Co.,* 193 Minn. 316 [258 N.W. 511] ; *Gulf, M. & N. R. Co.* v. *Kennard,* 164 Miss. 380 [145 So. 110]. In fact, the dangerous crossing rule was recognized by this court

with reference to crossings in general, in the case of *Norton* v. *Great Northern Ry. Co.*, 78 Mont. 273 [254 P. 165].'' Minnesota apparently adopts the view that the presence of a train on a crossing is sufficient warning in itself, in the absence of an unusual or extra hazardous condition. The view which is more modern in the age of the automobile and more compatible with realities is expressed in the dissenting opinion in *Ausen* v. *Minneapolis, St. P. & S. S. M. Ry. Co.*, 193 Minn. 316 [258 N.W. 511, 515]:

''Today it is a matter of common knowledge that automobiles are driven at night on our great, wide, straight highways at speeds which do not allow adequate time or space in which to stop for unusual objects such as freight trains completely obstructing the highway unless some warning of the possible or probable presence thereof is given, especially where, as in the case of such trains, the bodies of the cars are apt to be above the direct beams of the automobile lights which the law requires to be projected below 42 inches at 75 feet from the vehicle. Recognizing this, our counties and state highway department place conspicuous warnings of all variations from the normal road. Drivers of ordinary prudence have grown to rely on the presence of such warnings. Certainly ordinary care does not require an automobile always to be driven in the expectation that a railroad train may suddenly and without warning loom up across the highway. To fail to recognize this fact is to apply horse and buggy law to a motor age, and is a failure to recognize the common experience of mankind. Statistics disclose that 28 per cent of railroad crossing accidents result from vehicles being driven into the sides of moving or standing trains. A variety of circumstances may be suggested where persons driving with ordinary care might suddenly be confronted with a railroad crossing encumbered by a train. Obviously ordinary care requires some warning of the presence of the crossing upon which long trains may be passing or standing.''

As we have seen, no effective warning of any kind was given by defendant of the presence of its train moving on the crossing, and the failure to sound the locomotive whistle or the bell alone was sufficient upon which the finding of negligence may be supported. The Guida car was proceeding at only 15 miles per hour. The engine and three cars had passed the crossing when his car collided with the fourth one.

It may well be inferred that the bell or whistle could have been heard by plaintiffs and Guida, if they had been sounded continuously while the train was approaching the crossing and thereafter to the time of the collision. The jury were justified in concluding that if such warning had been given the collision would have been avoided. It is true that section 486 of the Civil Code requires a bell or whistle to be sounded only until the engine has crossed the highway, but the statute is only the minimum of care required, and a railroad company will not be held free from negligence even though it may have literally complied with safety statutes or rules. The circumstances may require it to do more. (See *Hinkle* v. *Southern Pacific Co., supra; Harper* v. *Northwestern Pac. R. Co., supra; Bush* v. *Southern Pacific R. Co.,* 106 Cal.App. 101 [289 P. 190] ; *Southern Pacific Co.* v. *Haight, supra*.)

Cases contrary to the views herein expressed are cited. (See cases bearing on the subject collected in 15 A.L.R. 901; 56 A.L.R. 1114; 99 A.L.R. 1454.) Many of those cases concede that when unusual conditions prevail at the crossing which render it especially hazardous and dangerous, it is a question of fact as to the warnings required to be given by the operator of the train. Others we do not believe express the correct view of the law and overlook the fundamental principles heretofore announced. Especial reliance is placed upon *Dunlap* v. *Pacific Electric Ry. Co.,* 12 Cal.App.2d 473 [55 P.2d 894]. That case is out of line with the case of *Harper* v. *Northwestern Pac. R. Co., supra,* (see discussion in *Southern Pacific Co.* v. *Haight, supra*), and it is disapproved. The statement in *Mallett* v. *Southern Pac. Co.,* 20 Cal.App.2d 500, 508 [68 P.2d 281]:

"A railroad company will not ordinarily be held liable for negligence merely because a crossing is temporarily blockaded by cars in the nighttime or in a dense fog, without furnishing lights or a watchman to warn travelers on the highway of the danger, provided such conduct is not in conflict with an ordinance or a statute to the contrary . . . ," was not necessary to the decision and by the use of the word "ordinarily" clearly leaves the question one to be determined by the circumstances of the case.

 It is contended that the sole proximate cause of the accident was the negligence of Guida, the driver of the car in which plaintiffs were passengers. It should first be mentioned that any negligence on Guida's part may not be imputed to plaintiffs thus making them guilty of contributory

negligence. Furthermore that defense is not an issue in this case. The negligence of the driver of a car is not imputed to the guest in railroad crossing accidents where the latter was not responsible for the driving of the car and the former was in sole control thereof. (*Smellie* v. *Southern Pacific Co.,* 212 Cal. 540 [299 P. 529] ; 22 Cal.Jur. 314.) Although the driver may have been negligent a recovery may be sustained against the railroad company for an injury to the guest. He may recover on the theory that his injury was caused by the concurrent negligence of both. (*Smellie* v. *Southern Pacific Co., supra;* 22 Cal.Jur. 314.) If it be assumed in the instant case that the driver of the car was negligent plaintiffs' recovery may nevertheless be sustained. They were passengers or guests in Guida's car. Defendant was negligent as we have seen. We cannot say as a matter of law, contrary to the jury's finding, that its negligence was not the proximate cause of the injury. Conceding that Guida was negligent, the defendant's negligence together with that of Guida operated concurrently down to the time of the collision. The jury was correctly instructed on that subject as follows: ''The Court: I advised you under these instructions—I will see if I can find it. If you find from the evidence herein that both the defendant Los Angeles Junction Railway Company and the driver of the automobile in which plaintiffs, Sam Peri and Jessie Johnson, were riding were each guilty of negligence, which negligence or which said negligence concurring one with the other proximately caused the accident in question, then your verdict should be in favor of the plaintiffs, Sam Peri and Jessie Johnson and against the defendant Los Angeles Junction Railway Company, a corporation. Does that answer your question?''

In any event it cannot be said as a matter of law that Guida was negligent. He was looking ahead, leaning over his steering wheel and watching the highway. His speed, 15 miles per hour, was not necessarily excessive under the circumstances. The jury was justified in determining that defendant as a person of ordinary prudence should reasonably anticipate that with no warnings whatsoever being given a prudent driver might collide with the train. Ordinarily it is not negligence as a matter of law for a motorist to drive at such a speed that he cannot stop within the range of his vision; it is a factual question. (See *Skaggs* v. *Willhour,* 210 Cal. 524 [292 P. 649] ; *Bixby* v. *Pickwick Stage Co.,* 131 Cal.App.

128

739 [21 P.2d 972]; *Casey* v. *Gritsch,* 1 Cal.App.2d 206 [36 P.2d 696]; *Burgesser* v. *Bullock's,* 190 Cal. 673, 679 [214 P. 649]; *Furuta* v. *Randall,* 17 Cal.App.2d 384 [62 P.2d. 157]; *Sawdey* v. *Producers' Milk Co.,* 107 Cal.App. 467 [290 P. 684]; *Haynes* v. *Doxie,* 52 Cal.App. 133 [198 P. 39]; *Hoffman* v. *Southern Pacific Co.,* 101 Cal.App. 218 [281 P. 681]; 23 Cal. L. Rev. 498.) *Ham* v. *County of Los Angeles,* 46 Cal. App. 148 [189 P. 462], involved the violation of an ordinance. The court there recognized that it is not negligence *per se* in *all cases* to drive a car at night at such a speed that it cannot be stopped within the radius of its lights. The other discussion in that case appears to be contrary to the views expressed in the above cited cases, which we believe is the better view, and is therefore disapproved.

 It is contended that the defendant had no notice of the failure of the wigwag signal to operate and that there is no evidence that it was defective or that defendant was negligent in maintaining it, citing *Vaca* v. *Southern Pac. Co.,* 91 Cal.App. 470 [267 P. 346]. The crew on the engine testified that the wigwag was working hence they must have observed it. The jury was entitled to disbelieve their testimony, as it did, with reference to the operation of the wigwag, and accept plaintiffs' evidence that it was not operating. Thus they could have observed that the wigwag was not operating. Knowing that, warning could have been given of the presence of the train on the crossing. It thus becomes immaterial whether the wigwag was defective or defendant was negligent in its maintenance because the negligence could consist in the failure to give any warning such as sounding the locomotive whistle or bell after discovering that the wigwag was not operating. The jury instruction stating the duty of defendant, as contended for by it, with reference to the maintenance of the wigwag is hereinafter quoted, and following it the jury may have concluded there was no negligence in that respect but nevertheless found negligence in other particulars.

 Defendant claims error with respect to the giving of instructions to the jury. It offered an instruction that the mere fact that plaintiffs commenced the action for damages is no indication that they suffered injuries or are entitled to recover; and that unless all the material allegations in plaintiffs' complaint are established by a preponderance of the evidence they cannot recover. The first part of the instruc-

tion was given but the latter part refused. However, the court in other instructions adequately advised the jury as to the burden of proof.

Defendant's proffered instruction that defendant was not required to exercise the highest degree of care, and it was required to exercise only ordinary care was given with the portion about high degree of care deleted. The instruction was sufficient. Other instructions fairly advised the jury of the standard of care applicable to defendant. There was no error in giving or refusing to give instructions.

Complaint is made of the deletion from defendant's instruction of the following words appearing in italics: *"I instruct you that* a person is presumed to have seen that which is open and obvious to the view, *(and I further instruct you that)* where a person is required in the exercise of due care to use their sense of sight, it is just as much negligence to look and not to see that which is in plain view as it is not to look at all *and I further instruct you that where there is no physical reason why one cannot see that which is plainly visible, I instruct you that to look in the direction of an object which is plainly visible, amounts to seeing such object."* The portion omitted, shown by italics above, was surplusage and added nothing material to the instruction as given. No error occurred thereby.

Objection is made to three instructions given at plaintiffs' request. The first reads that: "The streets of a municipality such as the place of accident here involved, are for the use of the traveling public, and the right of the defendant railroad company is only to use it in common with the public. The fact that the defendant, LOS ANGELES JUNCTION RAILWAY COMPANY has been granted the right to lay tracks and operate cars across the streets, gives it no exclusive right to travel over that portion of a street covered by its tracks." It is claimed that that instruction is contrary to the alleged rule that where a train occupies a crossing before a vehicle on the highway arrives at it, the privilege is exclusive. The instruction is general, and does not concern itself with the time element mentioned. As such it is a correct statement of the law. (See *Studer* v. *Southern Pacific Co.*, 121 Cal. 400 [53 P. 942, 66 Am.St.Rep. 39].) At most it was an incomplete instruction and defendant did not request any supplement or amplification of the instruction. It cannot now complain. (See *American Marine*

**130**

*Paint Co.* v. *Nyno Line, Inc.*, 70 Cal.App. 415 [233 P. 366].)

 At plaintiffs' request the jury was instructed: ''Respecting this general question of negligence you should consider all of the evidence relative to the weather and visibility and surrounding circumstances, including all of the elements, conditions and factors which ought to have governed a man of ordinary prudence, situated like the employees of defendant and as well as the driver of the automobile in which plaintiffs were riding at the time and place in question.'' We find no error in that instruction. It is in accordance with the views herein expressed with reference to the factors bearing on negligence.

 The court instructed the jury that: ''If you should find from the evidence herein that both the defendant and . . . the driver of the automobile in which plaintiffs . . . were riding were each guilty of negligence, which said negligence concurring one with the other, proximately caused the accident in question then your verdict should be in favor of plaintiffs . . . and against the defendant. . . .'' It will be noted that that instruction was substantially similar to the instruction heretofore quoted on concurring negligence which latter instruction was given in response to an inquiry of the jury: ''When a jury finds that both are negligent in this case, please advise if they should vote for or against defendant.'' The word ''both'' referred to the driver of the car and defendant. Defendant claims the instruction was improper because it did not set forth the elements of concurrent negligence. That instruction fairly stated the law. (See authorities cited *supra*.) In any event defendant is in no position to complain inasmuch as it did not request a more complete instruction on the subject.

 Complaint is made of the refusal to give defendant's requested instruction that defendant could not be held negligent by reason of the failure of the wigwag signal to operate unless it appeared that defendant had notice of the defect and failed to make repairs. Defendant's theory on the subject was adequately covered in the following instruction: ''It is claimed by the plaintiffs in this case that the train indicator failed to properly operate and give warning of the approach of the train. Even if you should find from the testimony that the train indicator did not operate at the time the plaintiffs approached the crossing, that would not be sufficient proof to support a charge of negligence in that regard. It is a matter of common knowledge that machinery created by

the human mind and hands, sometimes fails to operate or becomes defective by reason of its manner of construction and otherwise. Insofar as the train indicator is concerned, the law is that the railroad company shall exercise ordinary care in inspection and maintenance of said equipment, and if you find they have exercised ordinary care in its inspection and maintenance then they may not be charged with negligence by the mere fact that it failed to operate on the occasion in question. And even though it failed to operate, that did not relieve the driver of the car of his duty to use ordinary care in approaching the crossing.''

Refusal to give other instructions requested by defendant is urged as error because they stated the law as announced in *Dunlap* v. *Pacific Electric Ry. Co., supra*. As will be recalled that case is disapproved.

Damages in the sum of $4,000 were awarded to plaintiff Peri. He was unable to work for about six months after he was injured. He had been receiving $170 per month making a total of over $1,000 for the period. While it is true that he received $2 per day compensation while he was unable to work, that sum may not be deducted from his loss of earnings, because it was received from an insurance company under a policy owned and held by him. '' 'Damages recoverable for a wrong are not diminished by the fact that the party injured has been wholly or partly indemnified for his loss by insurance effected by him, and to the procurement of which the wrongdoer did not contribute; . . .' '' (*Loggie* v. *Interstate Transit Co.*, 108 Cal.App. 165, 169 [291 P. 618]; see also *Inglewood Park Mausoleum Co.* v. *Ferguson*, 9 Cal. App.2d 217 [48 P.2d 305].) In addition he incurred medical expenses of some $160. The balance remaining was not excessive when we consider that he suffered a brain concussion, a severe sacroiliac sprain requiring the wearing of a belt, and he was still suffering pain at the time of the trial.

The judgment is affirmed.

Gibson, C. J., Shenk, J., and Curtis, J., concurred. Edmonds, J., and Traynor, J., concurred in the judgment.