[Civ. No. 12724.   First Dist., Div. One.   Nov. 1, 1945.]

CHESTER BRYANT, Respondent, v. MARKET STREET
RAILWAY COMPANY (a Corporation), Appellant.

Linforth, Cannon & Miller, Cyril Appel and Jesse H. Miller for Appellant.

Edmund Gerald Brown, Harold A. Brown, Melvin M. Belli and James F. Brennan for Respondent.

WARD, J.—A rehearing was granted in this case in order to give further consideration to the contentions of appellant, vigorously urged, that the court had misstated, overstated or understated portions of the evidence. A rereading of the record, in the light of these contentions, has convinced us that the opinion heretofore filed correctly states all of the material facts, and that every fact stated in the opinion is supported by substantial evidence, or by reasonable inferences from that evidence. It must be remembered that "when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]; see, also, *Albaugh* v. *Mt. Shasta Power Corp.*, 9 Cal.2d 751 [73 P.2d 217]; *Bellon* v. *Silver Gate Theatres, Inc.*, 4 Cal.2d 1 [47 P.2d 462]; *Raggio* v. *Mallory*, 10 Cal.2d 723 [76 P.2d 660]; *Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689]; *Juchert* v. *California Water Service Co.*, 16 Cal.2d 500 [106 P.2d 886]; *Peri* v. *Los Angeles Junction Ry.*, 22 Cal.2d 111 [137 P.2d 441]; *Laherty* v. *Connell*, 64 Cal.App. 2d 355 [148 P.2d 895].)

■ One of the basic questions of fact involved in this appeal is where the southbound Powell Street car stopped after crossing O'Farrell Street. We think that the evidence supports the implied finding of the jury that when the Powell Street car stopped it was over the intersection and standing on the down grade. The plaintiff testified that he saw no car in the intersection as he approached. That supports the reasonable inference that no car was there. The gripman of the Powell Street car positively testified he held onto the cable until the back end of his car was even with the south property line of O'Farrell Street. While there are inconsistencies in both witnesses' testimony these inconsistencies were for the jury.

If the car was over the brow of the hill when it stopped then there was no need to keep a loose grip on the cable. To do so obviously created a trap for any car traveling on O'Farrell Street at that intersection. The danger to such cars if the Powell Street car held the cable after passing over the intersection is so obvious that the jury was justified in its implied finding that defendants were negligent and such negligence constituted the proximate cause of the accident.

We are satisfied that the opinion heretofore filed correctly disposes of all questions of law and fact presented on this appeal. We therefore adopt that opinion as the opinion of this court. It is as follows:

Defendant appeals from a judgment on a verdict for plaintiff in an action for damages for personal injury. It is urged that there is no evidence of negligence on the part of defendant; that in fact the evidence shows that the accident was caused solely by reason of the negligence of plaintiff. It is also claimed that the trial court erred in denying a motion for nonsuit, a motion for a directed verdict and a motion for a judgment notwithstanding the verdict.

An examination of the evidence indicates that a narration thereof is sufficient to answer the above contentions. Neither the amount of damages awarded, $27,500, nor the testimony in support thereof is attacked. Defendant does suggest, however, that the size of the verdict is referable to the circumstance that it was returned a few days before Christmas, a time when a jury might well feel generous. A point worthy of consideration is the contention that the court erred in giving an instruction on the subject of custom.

The accident occurred in March, 1942, about 8 p. m. at the intersection of O'Farrell and Powell Streets in the city of San Francisco. The physical facts appear as follows: At the intersection of O'Farrell and Powell Streets four cable car tracks intersect. There are four cables, two used by the O'Farrell Street line for propelling its cable cars, operating easterly and westerly, and two by the Powell Street line, operating northerly and southerly. The O'Farrell Street cables were installed at a lower level than those of the Powell Street line. The cables operated in slots, and, when disengaged from the car those of the Powell Street line were normally at a level about three inches below the bottom of the grip of an O'Farrell Street car as it crossed the intersection. The O'Farrell Street car was equipped with a grip which extended into the slot, the grip being used to hold the moving cable, thus transmitting motive power to the car. The grip on the O'Farrell Street car as extended into the slot always remained at the same level, not changing its position in the operation of the car. The bottom of the grip was provided with a mechanical device which held the cable. The device could be released by the gripman at any time he desired, allowing the cable to drop from the grip. By reason of the fact that the Powell Street cable was above the level of the O'Farrell Street cable, it was necessary for the westbound O'Farrell car to drop and let go of its cable before reaching the Powell Street tracks. A bumper was inserted along the O'Farrell Street tracks at a point before the Powell Street tracks were reached so that if the O'Farrell Street gripman failed to drop his cable the bumper would prevent any damage to the cables operating the Powell Street line. Since the Powell cables were above the O'Farrell Street cables a Powell car could proceed across the intersection without dropping the cable. However, holding the cable would raise it several inches so that if a Powell Street car were within the intersection, or within two or three car-lengths of the property line of O'Farrell Street, the cable would be raised to such a point that the grip of a crossing O'Farrell Street car would strike this cable. Northbound cars on Powell Street are moving upgrade and must therefore hold onto the cable. A signal has been placed at the southeast corner of the intersection to warn O'Farrell Street operators of the presence of northbound Powell Street cars at or near the intersection. The north-

bound cars at all times have the right of way. There is no signal to warn of the presence of southbound Powell cars.

Plaintiff Bryant was a gripman on the O'Farrell Street car proceeding westerly on the level toward the intersection at Powell Street, which at that particular time was free of either north or south bound cars. The O'Farrell car halted at about the east property line of Powell Street and took on passengers. Plaintiff looked to see whether the signal for northbound cars was clear. He then started up, holding onto the cable to gain momentum, but dropping it at the "let go" mark so as not to be stopped by the protective bumper. Plaintiff testified: "I made the let-go and then I hit something that stopped me suddenly, and that is all I know." Plaintiff's grip hit the Powell cable which at the moment was being held by a southbound Powell car. The Powell car had stopped out of the intersection but near the south curb line of O'Farrell Street in order to avoid striking an automobile.

Plaintiff and defendant differ in their versions of the duties of gripmen when crossing the intersection of Powell and O'Farrell Streets. This variance grows out of instructions given Powell Street gripmen, employees of the defendant system, and certain testimony relative to custom. Student gripmen of defendant were given instructions which included a list of questions and answers. One of the questions was: "Where are the six places to coast?" Coasting means that the grip does not hold the cable. The answer included the blocks on Powell north and south of O'Farrell. Whether such instructions were mandatory or optional was a disputed matter. Defendant officials testified they were optional. Plaintiff contended successfully before the jury that they were mandatory.

The assistant superintendent of the California Street Cable Car Company (the O'Farrell line) was called by plaintiff. The following résumé of his testimony favoring defendant was given on cross-examination: That from his observation when a southbound car on Powell Street stops north of O'Farrell, the gripman on the Powell car holds on to the cable and enters the intersection. When he reaches the O'Farrell tracks he throws the cable out if the track ahead is clear. In case the track ahead is obstructed so that he cannot continue down Powell Street, some gripmen hold the cable and some do not.

The instructor of gripmen on the O'Farrell line testified against the position taken by plaintiff on the trial as follows: "Now, your instructions with reference to —— that you gave to Mr. Bryant with reference to the distance that the Powell Street car should be before it was safe to go across —— will you tell us what those instructions were in that regard. A. Well, I instructed him to wait until the Powell Street car got three or four car lengths over the crown. Q. Three or four car lengths over the crown? A. Three or four car lengths over the crown before he started his car. Q. Now, when a car is standing there in that area, that is, a southbound Powell Street car is standing somewhere in the area of that south cross-walk there of O'Farrell Street, have you, as a gripman standing on your platform on the westbound car, a way of determining whether that gripman has dropped the cable? A. If the car isn't crowded you can see when he has thrown the lever over forward and you know that he has dropped the cable out; if the lever is standing straight up, he has got the rope in the cable [grip]. Q. And can you see that from your position in the car? A. Yes. Q. Did you give Mr. Bryant instruction as to how he should act if a car was crowded, and he couldn't see the lever? A. I gave him instructions to ring the gong and get a signal back from the gripman so that he was satisfied it was safe to get across."

Other witnesses for defendant company, including former employees, testified favorably to defendant. Had the jury decided in favor of defendant there would be evidence sufficiently substantial to uphold such verdict. This is equally true of the evidence supporting plaintiff's side of the case, which the jury was entitled to believe. This evidence consists in part of the instruction to Powell Street gripmen to coast on Powell Street between Sutter and Ellis, and plaintiff's statement that he was familiar with the instructions through talking with men on the Market Street and O'Farrell Street lines. There was also the testimony of fellow employees that as soon as the back end of the Powell car was clear the O'Farrell car could proceed.

There is a decided conflict in the evidence relative to negligence on the part of plaintiff. The trial court could not say as a matter of law that plaintiff was guilty of contributory negligence. Evidence of custom was introduced

by both plaintiff and defendant. Defendant argues that there is no authority for holding a party negligent "by reason of having failed to follow a usual custom to do a thing in a certain specified way or manner" and that the evidence in this case does not "rise to the dignity of establishing any custom or practice to drop the cable under the conditions and circumstances shown to have existed." The latter contention might well be addressed to a jury. On the first consideration there is evidence of the custom of the Powell Street gripman in passing over the O'Farrell Street tracks. In addition, there is the rule referred to by each side during the trial. It may be inferred from the testimony of plaintiff that he had knowledge ·of defendant's rule and custom and that he relied thereon and was justified in operating the O'Farrell car over the Powell tracks under all the circumstances as they existed at the time of the accident. (*Ross* v. *San Francisco-Oakland Terminal Railways Co.*, 47 Cal.App. 753 [91 P. 703]; *Gett* v. *Pacific G. & E. Co.*, 192 Cal. 621 [221 P. 376]; *Delmonte* v. *Southern Pacific Co.*, 2 Cal.App. 211 [83 P. 269]; *Sanchez* v. *Pacific Auto Stages*, 116 Cal. App. 392 [2 P.2d 845].)

From all the evidence introduced by plaintiff and defendant, a reasonable inference may be drawn that "coasting" means moving on a car's momentum, without gripping the cable; that a car may coast as well while holding the cable "loosely." This latter method is often used so that the gripman may change quickly from coasting to the use of the cable as a means of propelling the car. Because the Powell cable runs above the O'Farrell cable, a southbound Powell car can coast across the intersection by holding the cable loosely in the grip. It is necessary that the westbound O'Farrell car drop its cable before reaching the Powell tracks.

On this occasion the southbound Powell car was holding the cable, after passing the intersection, to permit an automobile to park. The gripman could have held the car in its position with the use of the brakes. The dangerous condition that would exist if the Powell Street car held onto the cable while within three or four car lengths of O'Farrell Street was so real that a warning light had been erected to warn O'Farrell Street car operators of the approach of northbound Powell Street cars. The fact that no such signal had been erected to warn of the presence of southbound cars may be some indication that the company did not think there was danger

from such cars. The only way that there would not be danger from the southbound cars would be if such cars dropped the cable. Here the operator of the Powell car, after crossing the crown of the intersection, and while on the down grade, continued to hold the cable. He should have known that in thus even loosely holding the cable after passing the intersection he was creating a dangerous condition for any O'Farrell Street car. The jury could reasonably infer from the evidence that such conduct violated the rule of the company and the custom of operators. Whether under all of the circumstances it was negligence for the gripman to act as he did was a question for the jury. The motion for nonsuit, the motion for a directed verdict and the motion for judgment notwithstanding the verdict need be given no further consideration.

The court instructed at the request of plaintiff: "If you find from the evidence that it was the duty or it was the custom of the gripman on the southbound Market Street cable cars to hold the cable with the grip while crossing the tracks of the California Street Cable Company at O'Farrell Street and then immediately drop or let loose of said cable and that plaintiff had knowledge of such custom or such duty, and that such custom or duty had been the practice on and prior to the 28th day of March 1942, and you further find that such custom or duty was generally known to and of common knowledge among the gripmen of the California Street Cable Company, and you further find that F. A. Van Beeber, the gripman of the Market Street Railway Company, did not let go of and drop the cable immediately upon crossing or immediately after the rear end of the car he was operating had cleared the southmost rail of the California Street cable car, you may consider these circumstances upon the question of whether defendant, Market Street Railway, was negligent." Defendant urges that the instruction was erroneous and highly prejudicial for the following reasons: "First. It allows the jury to find from the evidence the existence of a duty or custom with reference to holding the cable and dropping the same *without any reference to the particular circumstances and conditions which were present at the time* the Powell Street car was required to stop by reason of the obstruction on its track. Second. It allows the jury to find that a custom existed with reference to holding and dropping the cable when there is no evidence in the record to justify

the finding of the existence of any such custom or duty. Third. It allows the jury to find that the plaintiff had knowledge of such custom or such duty when there is no evidence in the record to justify the finding of any such fact. Fourth. It allows the jury to find that such custom or duty had been the practice on and prior to the 28th day of March, 1942, when there is no evidence in the record to justify the finding of any such fact. Fifth. It allows the jury to find on something which was generally known to and common knowledge among the gripmen of the California Street Cable Company, where their knowledge on such a subject would be immaterial to any issue on this case as it is only the knowledge of the plaintiff, and his reliance thereon, which could have caused him to have acted in such manner as to bring about his injury, and there is no evidence in the record that he had any knowledge of any such alleged custom. Sixth. It allows the jury to find that the gripman of the Market Street Railway Company was negligent if he did not let go of the cable and drop the cable upon crossing, or immediately after the rear end of his car had cleared the southmost rail of the California Street cable car tracks when there is no evidence in the record that under the particular conditions and circumstances then existing the gripman was supposed to so act, or that ordinary care required him to so act; on the contrary, the evidence being that whether he held the cable or dropped the same, under the circumstances which then existed, was a matter for his judgment and that holding the cable was good railroading and a safe practice. This instruction is also erroneous in that it violates the well established rule that instructions should not single out, emphasize, and argue to the jury, a portion of the evidence.''

The second and sixth grounds refer to the evidence. Defendant claims that there is no evidence of a custom or that gripmen were to act in a designated manner. This point has been heretofore discussed. The third, fourth and fifth points refer to the knowledge of plaintiff of the duty, practice and custom of defendant. These matters likewise have been disposed of previously. With reference to the first point, if defendant, after introducing evidence on its own behalf on the subject of usage, custom, common practice and the circumstances and conditions present at the time of the accident, desired that an appropriate instruction be given, it should have offered one. Our attention has not been called to an instruction proposed by defendant on this subject. Evidence of

operating rules and customs to be admissible must be material to an issue in the case. If not material, instructions thereon should not be given. In this case one of the principal issues was the rule and custom of defendant in operating cars and in particular this car at the time of the accident. The court in other instructions specifically referred to negligence, if any, "at the time and place alleged in the complaint" and "in the light of all the surrounding circumstances as shown by the evidence." At the request of defendant the court also fully instructed on contributory negligence.

█ The objection that the instruction was emphasized by giving it a second time is without merit. About an hour after the jury retired they requested to be returned to court to hear the testimony of one of the witnesses read. After a reading of the testimony one of the jurors requested the re-reading of the "instruction regarding Mr. Bryant's prudence in proceeding across the intersection relying on the custom of the Market Street Railway to drop their cable." The instruction was read. It might have been error not to do so. No objection was made before or after the jury was returned to the jury room, and in the opinion of this court no valid objection could be made.

The judgment is affirmed.

Peters, P. J., concurred.

KNIGHT, J., Dissenting.—The statement of the law set forth in the forepart of the above opinion relating to the power of appellate courts in dealing with evidentiary matters is, of course, not questioned; but the law is equally well settled, and has been so for a great many years, that if after examining the record on appeal it is found to be entirely barren of any substantial evidence supporting the verdict, or the verdict is clearly contrary to the uncontradicted facts —in other words, if the record shows that the jury has simply "run away" with the case—it is not only within the power of the appellate court, but it becomes its duty to order a reversal.

Following the granting of the rehearing in the present case, the appeal was reargued on the merits, and additional briefs were filed. The basic ground urged for rehearing was that the decision rendered was founded on an erroneous factual premise. In so contending appellant, on page 2 of its peti-

tion for rehearing, states in part: "This court has failed to give consideration to the facts testified to by the witnesses and in place thereof has drawn inferences which have no support in the record. In fact, some of the so-called 'inferences' are drawn in spite of the express testimony of the witnesses to the contrary." Appellant further asserted in substance that in reviewing the case on the merits this court failed to give proper consideration to evidence relating to the particular conditions and circumstances present at the time and place of the happening of the accident. The petition then went on to specify some seven instances wherein it was claimed this court had overlooked or erroneously construed vital portions of the evidence, or had drawn inferences having no evidentiary support.

After having reconsidered the evidence and analyzed the points made by appellant against the soundness of the former opinion, which the majority members of the court have now adopted verbatim (with two pages added at the beginning thereof), it is my firm conviction that the present decision rests on an erroneous conception of the evidence, and that, as appellant contends, the uncontradicted facts of the case show beyond question that plaintiff's injuries resulted solely from his own carelessness in attempting to operate his car across the intersection, under the existing conditions, in clear violation of special instructions theretofore given him by the officials of his own company; furthermore, that as a matter of law the evidence utterly fails to show any negligent act in the operation of the Powell Street car.

As set forth in the main opinion, the accident happened about 8 o'clock at night at the intersection of O'Farrell and Powell Streets where the double tracks of the O'Farrell Street line, running easterly and westerly, cross the double tracks of the Powell Street line at right angles. The O'Farrell Street car was outbound, that is, it was traveling westerly along the northerly track on O'Farrell Street. Two officials of the O'Farrell Street line testified positively, without contradiction, that it was an unwritten rule of that company, and that plaintiff had been specifically instructed, that if a southbound Powell Street car crossed in front of the approaching O'Farrell Street car at that intersection, the O'Farrell Street car should not attempt to cross in back of the Powell Street car unless the latter was at least three car lengths below the southerly crown of the intersection; and that in case the Powell Street car stopped within that distance from the crown

of the intersection, the operator of the O'Farrell Street car was to be sure and check that the Powell Street cable was out of the grip before attempting to cross. One of the witnesses so testifying was Jules J. DeMoor, the superintendent of the O'Farrell Street line. The pertinent portions of his testimony were as follows: "Q. In addition to the written rule which I just read to you, Mr. DeMoor, did you have any other rules of the California Street Railroad [the O'Farrell Street line] with relation to the operation of those O'Farrell Street cars at Powell Street, upon which the employees were advised and instructed? A. Yes, sir, we had the rule that is in the book concerning the northbound car, and we also have—— our men are instructed in regard to the southbound. . . . Q. Did you have such a rule in addition to the one that I have just read? A. Yes, we have. The men are so instructed—— it is not a written rule. The men are instructed by our instructors, that the Powell Street car proceeding south, and our car proceeding west, if a Powell Street car crosses in front of our car at that point, to be sure and not cross in back of that car unless that car is at least three car lengths below the crown, and also in case of a car stopping to be sure and check that the cable is out the grip before crossing. . . . Q. Do you give your employees special instructions as to what to do in the event a Powell Street car, southbound, is stopped anywhere near that intersection? . . . A. Yes, sir. All our men are instructed that in cases of a car being stopped, the southbound car being stopped and not being at least three car lengths, or 100 feet below the crown, not to cross in back of that car until they make sure that this man has thrown the cable out. Mr. Miller. Q. When you refer to throwing the cable out you mean releasing the cable from the grip and dropping it? A. Dropping it, that's right." The other witness was Thomas Fitzmaurice, who at the time of the accident and for some seventeen years prior thereto had been in the employ of the O'Farrell Street line, part of which time he acted in the capacity of instructor for gripmen. He testified that in May, 1941, he instructed plaintiff as to the manner in which he should operate his car over the Powell Street intersection. The substance of his testimony was as follows: That he gave plaintiff instructions that when operating west on O'Farrell Street and if a Powell Street car was stopped south of O'Farrell not to cross over back of the Powell Street car unless he made sure that the Powell

Street car had dropped the cable out of his grip, because it was considered dangerous; that he told plaintiff that when the cable was in the Powell Street grip it caused the Powell cable to run high enough that he could hit it with his grip in crossing over, and if a Powell Street car was standing there not to cross over until he got a signal from the Powell Street gripman that it was all right to proceed, that he had dropped his cable out. Continuing, his testimony was as follows: "Now, your instructions with reference to—— that you gave to Mr. Bryant with reference to the distance that the Powell Street car should be before it was safe to go across—— will you tell us what those instructions were in that regard? A. Well, I instructed him to wait until the Powell Street car got three or four car lengths over the crown. Q. Three or four car lengths over the crown? A. Three or four car lengths over the crown before he started his car. Q. Now, when a car is standing there in that area, that is, a southbound Powell Street car is standing somewhere in the area of that south cross-walk there of O'Farrell Street, have you, as a gripman standing on your platform on the westbound car, a way of determining whether that gripman has dropped the cable. A. If the car isn't crowded you can see when he has thrown the lever over forward and you know that he has dropped the cable out; if the lever is standing straight up, he has got the rope in the cable [grip]. Q. And can you see that from your position in the car? A. Yes. Q. Did you give Mr. Bryant instruction as to how he should act if a car was crowded, and he couldn't see the lever? A. I gave him instructions to ring the gong and get a signal back from the gripman so that he was satisfied it was safe to get across."

The Powell Street car was southbound, but when the rear end of the car reached a point just south of the southerly track of the O'Farrell Street line it was unable to proceed further because there was an automobile on the track which the driver was attempting to park; and when the Powell Street car stopped the gripman thereof did not drop the cable from the grip, but released the grip on the cable so as to allow the cable to run freely through the grip without moving the car. When the track was clear ahead, the gripman tightened the grip on the cable and the car started forward, but it had proceeded no farther than just over the crown of the O'Farrell Street intersection when plaintiff started his car across the intersection, with the result that his grip struck the cross

cable of the Powell Street line, snapping the cable in two and throwing the lever of the O'Farrell Street car back violently, striking plaintiff in the pit of the stomach and rendering him unconscious. Obviously, in thus attempting to cross the intersection while the Powell Street car was within a few feet of the southerly boundary of the O'Farrell Street intersection, plaintiff clearly violated the rule of his own company and the specific instructions theretofore given him as to the manner in which he should operate his car over that particular intersection; and by so doing he became solely responsible for the injuries he received. His only excuse for having proceeded across as he did was that he did not see the Powell Street car; but, according to his own testimony, the reason he did not see it was that in violation of his instructions he did not look for it. In this respect he testified as follows: "Q. Were you looking in the direction you were traveling, when the thing happened? A. Sure. Q. Did you see the Market Street Railway car at all before the accident happened? A. I don't remember about seeing it. Q. Do you recall seeing it in the vicinity there, of Powell and O'Farrell Streets. A. No, sir. Q. —— as you approached that corner? A. No, sir. Q. So you cannot tell us anything about that car at all, Mr. Bryant? A. No, nothing at all. Q. As to where it was, or when it had crossed your tracks? A. No, nothing at all. Q. Or whether it had even crossed your tracks, is that it? A. No. Q. Is that your testimony? A. That is right. Q. Was there any car there as you proceeded across O'Farrell and Powell? A. There wasn't any car in the crossing; that is all I looked out for. Q. That is, there was no car on your car tracks, is that what you mean? A. That is right. Q. Your track was clear? A. Yes. Q. Whether there was a car just immediately clear of your tracks or not, you don't know? A. There was no car on the tracks, that is all I can say. . . . Q. You could proceed out O'Farrell Street without running into any street car? A. That is right. Q. That is all you can say as to the position of the Powell Street car at the time this accident happened? A. Yes. . . . Q. Did you know when you started to cross that street that if the Powell Street car was holding onto the cable you would run into it? A. Yes, uh-huh. . . . Q. Were any lights burning on the Market Street Railway car? A. I don't know. Q. Did you pay any attention to the Market Street Railway car at all? A. No." . In the main opinion it is stated: "The Powell car had

stopped out of the intersection but near the south curb line of O'Farrell Street. . . .'' But this is manifestly an erroneous construction of the evidence, for the only testimony on the subject shows to the contrary. It shows that the car stopped on the southerly crown of the intersection with the rear end of the car only a few feet from the south rail of the eastbound O'Farrell Street track. On this point the conductor of the Powell Street car testified as follows: ''Q. And did your car then proceed across O'Farrell Street? A. We did. Q. And how far did you proceed? A. Well, we proceeded to where the back end of the cable car would be approximately three or four, maybe five feet, from the eastbound O'Farrell tracks. Q. And at the time your car—— what did your car do at that time? A. Well, we were forced to stop for an automobile that was endeavoring to park. . . . Q. Did you observe whether or not the car was, your car, was over the brow of the hill as it stopped, or where it was? A. Well, I would say that the front of the car might have been a little over the brow, but the trucks proper would be on the flat. Q. The trucks proper of the car would be on the flat? A. On the flat, yes, sir. . . . Mr. Miller. Q. Mr. McWilliams, would you state again, please, where the rear of your car was with reference to the eastbound O'Farrell Street tracks? A. Approximately three to five feet from them, south of them.''

Again in the main opinion, as it is now written, it is stated: ''We think that the evidence supports the implied finding of the jury that when the Powell Street car stopped it was over the intersection and standing on the down grade. The plaintiff testified that he saw no car in the intersection as he approached. That supports the reasonable inference that no car was there.'' In view of the positive testimony given by the plaintiff that he did not pay any attention to the Powell Street car, how can it fairly be said that such testmiony reasonably supports the inference that the Powell Street car was not within the intersection?

Finally, on this branch of the case it should be stated that according to plaintiff's own testimony he knew that if a southbound Powell Street car was holding the cable while standing on or near the southerly boundary of the intersection, an O'Farrell Street car would not be able to cross the intersection without striking the Powell Street cable.

It is also my conclusion, as above indicated, that the evidence fails as a matter of law to establish any negligent act in the operation of the Powell Street car. It fails to show

that any rule or custom was violated, but on the contrary shows that the gripman of the Powell Street car was following the proper railroad practice in acting as he did under the circumstances. Obviously the car could not proceed beyond the crown at the southerly boundary of the O'Farrell Street intersection because the track was blocked by the automobile, and the testimony shows that it was necessary to hold the cable at the point where it stopped because otherwise it would have been necessary, in order to start the car forward, for the car crew to get out and push it over the crown of the intersection. In this connection, the gripman of the Powell Street car testified that after he brought his car to a standstill he "clanged" the bell for two or three minutes to get the automobile out of the way; that as soon as the track was clear he tightened the grip on the cable to give the car a boost over the crown, and when the rear end of his car passed over the intersection boundary he dropped the cable, and that just as he was about to drop the cable the impact occurred. The only reasonable inference that can be drawn from these uncontradicted facts is that the O'Farrell Street car started to cross the intersection about the time the Powell Street car started to move over the crown. In the main opinion as now written it is said that "If the car was over the brow of the hill when it stopped then there was no need to keep a loose grip on the cable. To do so obviously created a trap for any car traveling on O'Farrell Street at that intersection." As already shown, however, the uncontradicted evidence proves that the car did not stop "over the brow of the hill." It stopped *on* the brow of the hill and it was necessary to hold the cable loosely at that point so that it could be grasped tightly to start the car. It is perfectly true that an accident would be inevitable if an O'Farrell Street car attempted to cross the Powell Street intersection while a Powell Street car was stopped within a car's length of the southerly boundary of the intersection and was holding the cable loosely. But certainly no such accident would occur if the gripmen of the O'Farrell Street line obeyed the plain instructions given to them by the officials of the O'Farrell Street company not to attempt to cross the intersection while a Powell Street car was within three car lengths of the southerly boundary of the intersection without first ascertaining definitely whether the Powell Street car was holding the cable.

I believe, also, that in the state of the evidence shown by

the record herein it was prejudicial error, for the reasons assigned in appellant's briefs, to give the instruction set out in the main opinion in that unqualified form.

The judgment, in my opinion, should be reversed.

A petition for a rehearing was denied December 1, 1945. Knight, J., voted for a rehearing. Appellant's petition for a hearing by the Supreme Court was denied December 20, 1945. Schauer, J., and Spence, J., voted for a hearing.