[L. A. No. 21092. In Bank. Apr. 4, 1950.]

WILLIAM S. POWELL et al., Appellants, v. PACIFIC ELECTRIC RAILWAY COMPANY, Respondent.

Charles A. Thomasset for Appellants.

C. W. Cornell, O. O. Collins, Malcolm Archbald, John R. Allport and John H. Gordon for Respondent.

SPENCE, J.—Plaintiffs appeal from a judgment entered on a verdict denying them recovery of damages for the death of their minor son in a railroad crossing accident.

As sole ground for reversal, plaintiffs urge that the evidence established as a matter of law that defendant railway company was negligent, and that such negligence was the proximate cause of the fatal accident. But this appears to be the "usual fact case" for the jury's determination of liability upon the controverted issues. (*Taylor* v. *Wright*, 69 Cal.App.2d 371, 374 [159 P.2d 980].) So applicable is the elementary rule that "when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial

evidence, contradicted or uncontradicted, which will support the conclusions reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.'' (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]; see, also, *Raggio* v. *Mallory*, 10 Cal.2d 723, 725 [76 P.2d 660]; *Juchert* v. *California Water Service Co.*, 16 Cal.2d 500, 507-508 [106 P.2d 886]; *Peri* v. *Los Angeles Junction Ry. Co.*, 22 Cal.2d 111, 117 [137 P.2d 441]; *Bryant* v. *Market Street Ry. Co.*, 71 Cal.App.2d 508, 509 [163 P.2d 33].) Such settled principle of law requires affirmance of the judgment herein.

The record consists of the judgment roll and a settled statement from which appear the following facts: Appellants' son died as the result of injuries sustained in a collision between one of respondent's interurban trains and a truck operated by one Lester D. Dewey. At the time, decedent was in the employ of Mr. Dewey and was being transported to the latter's place of business. The fatal collision occurred about 1 p.m. on August 28, 1946, at the intersection of 92d Street and respondent's private right of way in the city of Los Angeles. The weather was clear. At the crossing point involved, 92d Street, running east and west, was 30 feet wide, and the right of way, running north and south, was more than 100 feet wide. Graham Avenue paralleled the right of way on the easterly side, and it was 32 feet wide with curbs on both sides. On a pole at the northwest corner of Graham Avenue and 92d Street there was an automatic wigwag signal, and Graham Avenue itself was protected by a boulevard stop on its easterly side.

The right of way had six sets of rails, the first four of which at the trial were designated from east to west as A, B, C, and D. The accident occurred when respondent's southbound through train traveling on track C collided with the truck in which appellants' son was riding as it crossed the right of way from east to west on 92d Street. The easterly rail of track C was 55 feet from the westerly curb of Graham Avenue. The truck made a boulevard stop on the easterly side of Graham Avenue, crossed that street, and entered respondent's right of way, proceeding over tracks A and B without stopping until it reached track C, where it was struck by the southbound train. There was no traffic ahead of the truck and none crossing in the other direction.

The truck was a 1936 Diamond T 2-ton, flat bed, open body

model with no stakes, sides or roof, and was regularly used by the owner to transport merchandise in his furniture business. At the time of the accident, appellants' son and two other boys were sitting on the truck platform behind the cab. The impact of the collision hurled appellants' son over his two companions and onto the ground, where he was struck by the train and suffered skull injuries from which he subsequently died. The point of impact was established as seven feet south of the prolongation of the north curb of 92d Street and 54 feet west of the west curb of Graham Avenue.

Lester D. Dewey, the driver of the truck and a witness for appellants, testified that traveling west on 92d Street, he made the boulevard stop at Graham Avenue, continued "straight across Graham" at "about 8 miles an hour" and was "headed into the Pacific Electric right of way" at the "92nd Street crossing"; that he was "approximately half way across" Graham Avenue when he "first saw the train," which was then about "900 feet" away and "rolling [at] a pretty good rate of speed"—perhaps "fifty miles an hour"; that he did not know "whether or not the wig-wag was going" but "if it was, [he] didn't see it"; that when he "made the boulevard stop" at Graham Avenue, his "brakes were operating all right"; that after he saw the train coming and that he "didn't have a chance to beat it [across]," he tried to stop as he started over the tracks but without effect because of an unexpected and complete failure of his hydraulic brakes; that he "kept right on going," rolling "very slowly"; that he then "pulled the emergency back, but [it] wasn't good enough to stop [the truck] before it got on the track [C] . . . just enough to catch the right front wheel of the front end of the truck"; that "at the time the train actually hit the truck, he [the motorman] probably wasn't going over fifteen miles an hour, because he had already used his brakes [to] slow the train down." In the course of cross-examination, Mr. Dewey stated that he "first . . . thought [he] might have time to beat the train across" but then he "saw it was traveling pretty fast" so he decided "as he reached 'A' track" to stop: that "if the brakes hadn't [gone] out, [he] could have stopped [the truck] instantly . . . at the speed [he] was traveling," which was about eight miles per hour; that the stop would have been at "about lane 'B' "; that he was "familiar with that crossing" and that was the "customary place for people to stop."

The motorman, Wilmer I. Kivett, testified in substance, as a witness for respondent, that as he approached 92d Street, he was operating two cars; that the sun was shining and for a distance of 2,000 feet north of the scene of the accident, his view of the intersection was unobstructed; that there was no traffic ahead of him and none crossing the intersection; that when he was about 600 feet away from the scene of the accident, he started braking and continued braking for a distance of 400 feet, thus reducing his speed to 25 miles per hour; that he released his air and started coasting when he first saw the truck, and continued to coast until he was about 75 feet from the scene of the actual collision, when he applied his emergency brake; that he was not braking at all for a distance beginning at a point 200 feet north of the intersection [when he first saw the truck] to a point approximately 75 feet from the intersection; that the truck was on the first rail of the tracks denominated A when he first saw it; that while he was approaching, he saw the truck cross tracks A and B without stopping; that at 25 miles per hour he could have stopped his train within 250 feet, and that he did bring it to a stop about 20 feet south of the south curb of 92d Street.

It was stipulated that this witness at the coroner's inquest, which was held seven days after the accident, testified as follows: ''I was southbound and had pinched down to the company speed of 25 miles an hour or less for the crossing and about 150 feet from the crossing I saw the truck enter the right-of-way. I thought the truck was going to stop and I released my air and at that time I was going about 25 miles an hour. Then, I saw the truck wasn't going to stop so I put my train into emergency about 75 feet from 92nd Street and the truck rolled onto the private right-of-way and the left front corner of the car caught the right front wheel and fender of the truck throwing it around and off the right-of-way.'' He further stated at that time that when he ''first observed'' the truck, it was ''at the west curb line of Graham'' just ''entering the right-of-way'' and his train was about ''150 feet north of 92nd Street''; that he ''thought [the truck] was going to stop,'' but he ''couldn't tell . . . if [its] brakes had been applied''; that '' [the truck] wasn't traveling very fast''; that ''the wigwags were in operation when [the train] entered the intersection'' and he ''assumed that the truck was going to stop.''

Over respondent's objection, appellants were permitted to introduce into evidence certain train operating rules and regu-

lations of the railway company, whereby it was required that motormen reduce their "speed . . . a sufficient distance in advance" of a highway crossing "so that train will be allowed to coast on approach to crossing, to enable full braking power being obtained in emergencies." The rules further provided that "after speed of train has been reduced to speed applying [at the crossing] and there is no vehicle or other conveyance seen approaching that will conflict, brakes may then be released and train allowed to coast."

In this state of the evidence, the trial court submitted to the jury for consideration, under appropriate instructions, the following matters for determination of respondent's liability: (1) appellants' charge of negligence against the railway company by reason of the conduct of its motorman; (2) respondent's claim of contributory negligence affecting appellants' right of recovery; (3) the question of the proximate cause of the fatal collision; and (4) whether or not the accident was unavoidable. The jury brought in its verdict in favor of the railway company and judgment was entered thereon. Appellants' motion for a new trial, made on the ground, among others, of insufficiency of the evidence, was denied. This appeal followed.

In contending that they are entitled to a judgment as a matter of law, appellants urge these points: (1) the absence of any evidence in the record as to contributory negligence in bar of their recovery; (2) the liability of the railway company because its motorman was negligent and his negligence proximately contributed to the happening of the fatal accident; and (3) the testimony of the motorman as an admission of liability. Appellants' first proposition is correct, but their second and third claims involve the redetermination of evidentiary matters which were essentially questions of fact for the jury to decide.

As appears from the above recital of the evidence, respondent's train was 150 to 200 feet from the crossing when the motorman first saw the truck enter the right of way and he "thought the truck was going to stop." At that time the driver of the truck was aware of the approach of the train and admittedly intended to stop at the "customary place for people to stop"—on track B—to allow trains traveling on the track immediately to the east, track C, to pass. Accordingly, the truck driver applied his brakes when on track A, as he was traveling but eight miles per hour, a speed which would

have permitted his truck, loaded as it was at that time, to have "stopped instantly" if his brakes had not failed to work. There was nothing in these movements which would apprise the motorman, as he first saw the truck proceeding in the right of way, that it was not under perfect control, that it would not slow its speed to a complete stop at the customary place, as the driver admitted that he intended to do, and let the train pass. (*Korchak* v. *Pacific Electric Ry. Co.*, 9 Cal.App.2d 89, 93 [48 P.2d 752].) Appellants argue that under section 575 of the Vehicle Code, the truck was required to stop not less than 10 feet from the first rail of the tracks; and that in full view of the motorman and to his knowledge and admitted observation, the truck did not stop but continued to cross the tracks A and B to the point of collision. In other words, when the motorman in his train operations released the air and started to coast, the truck was in violation of said section 575, and according to appellants, that should have been a warning to the motorman that the truck might not come to a halt but would attempt to cross track C ahead of the approaching train. However, such argument does not take into account the full picture—that although there was a violation of the statutory requirement, nevertheless the slow travel of the truck while proceeding in the right of way might reasonably suggest the driver's intent to stop before reaching the track of the approaching train. Clearly it was for the jury to determine as a question of fact whether the motorman acted as a man of ordinary prudence under the circumstances in the operation of his train when he first saw the truck on the right of way and assumed its probable procedure. (*Peri* v. *Los Angeles Junction Ry. Co., supra,* 22 Cal.2d 111, 120, and cases there cited.)

Nor does respondent's above-noted operating rule avail appellants in establishing their right to recover because of the happening of the fatal accident. The rule was properly admitted in evidence as bearing on the standard of care respondent thought appropriate to insure the safety of others at its track crossings. (2 Wigmore on Evidence [3d ed.] § 282, p. 132; 3 Shearman & Redfield on Negligence, § 506, p. 1281.) While a violation of such rule would not constitute negligence *per se,* it would be a circumstance for the jury to consider on the issue of respondent's negligence. (*Gett* v. *Pacific Gas & Elec. Co.*, 192 Cal. 621, 625 [221 P. 376]; *Nelson* v. *Southern Pacific Co.*, 8 Cal.2d 648, 654 [67 P.2d 682]; *Simon* v. *City and County of San Francisco,* 79 Cal.App.2d 590, 597-598 [180

P.2d 393]; *Holder* v. *Key System,* 88 Cal.App.2d 925, 935 [200 P.2d 98].) The court so instructed the jury as to the legal effect of the rule—that while "not the law," a "breach of duty" might be implied from a finding of violation of the rule.

Neither was it "misleading" nor did it effect a conflict for the court to give the further charge that the motorman would not be guilty of negligence in the operation of the train if the jury found that he "used the same degree of care that any prudent person would have used under the same or similar circumstances." Since respondent's rule was "not the law" but only a factor to be considered in the jury's evaluation of the motorman's conduct as a factual issue (*Simon* v. *City and County of San Francisco, supra,* p. 598), the standard of care that he was bound to exercise remained "that of the man of ordinary prudence under the circumstances." (*Peri* v. *Los Angeles Junction Ry. Co., supra,* 22 Cal.2d 111, 120.)

In challenging the propriety of the motorman's operation of the train, appellants argue that the situation which confronted him was one precisely anticipated by respondent's rule, to the effect that he should not release the brakes on approaching an intersection when there is another vehicle seen approaching which "will conflict." Accordingly, appellants argue that had he continued to brake his train instead of releasing the air when he first saw the truck enter the right of way, the accident could have been averted. But the evidence was such that the jury may have concluded that there was in fact no violation of the rule, and that the motorman exercised due care under the circumstances to avoid the collision with the truck. The motorman testified that he thought the truck was going to stop before reaching track C and yield the right of way to the train, and the jury could reasonably have inferred therefrom that the motorman justifiably regarded the truck as a vehicle that would not "conflict" with the train as it approached the intersection. Moreover, according to the motorman, the wigwag signal, set to operate "1000 feet back" from the crossing, was oscillating in warning of the train's approach and there was nothing to suggest to the motorman that the driver of the truck would not heed such warning. (*Billig* v. *Southern Pacific Co.,* 192 Cal. 357, 363, 366 [219 P. 992].) Therefore, when the motorman released the air and started to coast, he had no notice or reason to believe that the truck's brakes would fail to function as the driver attempted to stop at the "customary place"—on track B—before reach-

ing track C. In fact, it would be difficult to hold the motorman obliged to anticipate such brake failure on the truck when the driver himself admitted that he did not know or have reason to expect such happening. However, as soon as the motorman saw that the truck was not going to stop, he applied the emergency brake to the train but at that time, he was only 75 feet from the crossing, traveling at a reduced speed of 25 miles per hour, and requiring 250 feet to effectuate a stop. Manifestly the impact with the truck was then inevitable in view of its proximity. However, there was ample evidence for the jury to have inferred that the sole proximate cause of the fatal collision was the failure of the brakes on the truck to function, with the result that the truck rolled onto track C in front of the approaching train, and that the motorman's conduct was consistent with the action of an ordinarily prudent man under the circumstances. Such cases as *Girdner* v. *Union Oil Co.*, 216 Cal. 197, 203 [13 P.2d 915], cited by appellants in relation to the application of the doctrine of last clear chance, are not in point here. Nothing in the evidence here suggests that the motorman, after he became aware of the truck's perilous situation, had a clear or, in fact, any opportunity to avoid the accident by the exercise of ordinary care. (*Erwin* v. *Morris*, 10 Cal.App.2d 168, 171 [51 P.2d 149]; *Dickey* v. *Thornburgh*, 82 Cal.App.2d 723, 729 [187 P.2d 132].) Rather this was simply a case for the jury's determination of respondent's liability according to the ordinary rules of negligence bearing upon the motorman's conduct (*Korchak* v. *Pacific Electric Ry. Co., supra,* 9 Cal.App.2d 89, 93), and its disposition of the factual issues in respondent's favor will not be disturbed. (*Peri* v. *Los Angeles Junction Ry. Co., supra,* 22 Cal.2d 111, 120.)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.